Debbra Lee **KISSINGER**, Appellee,

v.

Steve G. **KISSINGER**, Appellant.

No. 59092.

Court of Appeals of Oklahoma, Division No. 4.

Nov. 13, 1984.

Released for Publication by Order of Court of Appeals Dec. 7, 1984.

David R. Cerchie, Tulsa, for appellee.

J. Bradford Griffith, Tulsa, for appellant.

BRIGHTMIRE, Judge.

The woman obtained a divorce in 1979 after nearly twelve years of marriage and gained custody of the couple's two minor children. The present controversy began when the man asked that the decree be modified by granting him custody of the older child. This triggered a request by the woman for a child support arrearage judgment. The man denied he was in arrears by reason of an earlier agreement with the woman to pay less than that ordered by the court and contended she should be estopped from enforcing the decretal order—a defense the trial court rejected.

The man succeeded in obtaining the custody he sought, but he is unhappy about a further order requiring him to continue paying child support and about an arrearage judgment rendered against him. The woman, on the other hand, is satisfied with all of the July 19, 1982, decisions except the denial of her request for an order requiring the man to pay attorney fees.[1] Both appeal.

I

The man's first assignment of error is framed thus: the woman "waived her right to enforce the total child support award made in ... [the] Decree ... and should be estopped from enforcing that provision...."

Factual conclusions offered by the man in support of his legal conclusion are: (1) the woman's acceptance of "the [reduced] monthly payments, without complaint throughout the years ... lulled him into inaction" with regard to attempting to obtain a modification of the decree; (2) the

"parties had an oral agreement to reduce child support" and "[p]ayments at the agreed-upon reduced rate were made regularly"; (3) the woman accepted, acquiesced in, and waived her right to enforce the child support decree.

The man's thesis is undergirded with cases from Kansas, Arkansas, Texas, California and New York.[2]

Before undertaking to determine the law of this state regarding the arrearage issue, it would be helpful to examine the relevant evidence in some detail.

The man testified, "We discussed the fact that with all the bills that I was having to pay, that I could not manage to pay a hundred and fifty dollars a month per child [as ordered] and continue to pay all the other bills that I was to pay, plus have money for my own living expenses.... I offered that I could pay a hundred dollars a month for each child.... She agreed to it at that time."

This was in the fall of 1979. He then began paying only $200 per month. In October 1981, the older child started living with the man. Shortly after this the man commenced paying only $100 a month.

The woman confirmed that she and the man discussed the child support problem in 1979 and after that she began receiving only $200 a month until shortly after the oldest child began to live with his father, at which time the man started paying only $100 a month. She acknowledged being aware of the financial difficulties experienced by the man at that time due largely to having to liquidate heavy jointly-incurred indebtedness.

"Did you agree with him that he could make $200 a month payments?" she was asked.

---

1. It is interesting to note that an order nunc pro tunc was issued to indicate that the trial court's decision was rendered on July 19, 1982. The order, however, mistakenly stated the date as July 19, 1983. Perhaps an order nunc pro tunc to correct the order nunc pro tunc would be appropriate.

2. *Bethell v. Bethell,* 268 Ark. 409, 597 S.W.2d 576 (1980); *Frawley v. Smith,* 3 Ark.App. 74, 622 S.W.2d 194 (1981); *Graham v. Graham,* 174 Cal.App.2d 678, 345 P.2d 316 (1959); *McKee v. McKee,* 154 Kan. 340, 118 P.2d 544 (1941); *Dandridge v. Dandridge,* 17 Misc.2d 356, 183 N.Y. S.2d 263 (1959); *Sovereign Camp, Woodmen of the World v. Putman,* 206 S.W. 970 (Tex.Civ.App. 1918).

"I really didn't have any choice," she answered. "He said he couldn't, and he wouldn't. And I told him that I expected that at some point that he could make it, to you know, go by what was agreed upon.... I didn't say yes, Steve, it's okay if you always do this. But I had no choice...."

She also told of a second conversation on the same subject in November or December 1979. "I had told him that Richard [her friend] at that time was going to share a home with us. And that because of that, to help Steve [the man] out because he did take [on] a lot of bills, I felt that it was not necessary for him to continue paying the house payment for a year. And [I] felt like that might be able to alleviate some of the pressure of, you know, of his financial problems at that time."

"And so from that point forward, you were relieving him of that [$335 house] payment?"

"That's right," she responded.

She explained that she was working in real estate and added, "So obviously, I wanted to help in any way I could." She said she even undertook to pay off "any clothing charge accounts that I had. Anything that I incurred myself."

The woman recalled yet a third conversation about October 1981 when young Steve went to live with his father. She said she had not confronted the man with the subject of resuming full payment of the court-set child support since agreeing to the reduction and she felt like it was a good time to request its resumption with regard to the child remaining in her custody.

Finally, the woman clarified a couple of other points with reference to the matter. Her acceptance of the reduced child support payment was for an indefinite period and there was no agreement that he would later pay the amount of reduction as arrearage. And while she said she "would have assumed that he would have made some offer to ... pay the arrearage," she did accept the reduced amount "as full payment" up until the older boy began to live with his father.

## II

■ There appears to be no decision in this state precisely dealing with the first issue raised by the man, though the high court has lately considered a related one and developed some helpful functional principles in *McNeal v. Robinson,* 628 P.2d 358 (Okla.1981). It has been established, of course, that unpaid court ordered child support becomes a debt created by law and a legal action is maintainable in any court of competent jurisdiction to reduce such arrearage to judgment. *Turk v. Coryell,* 419 P.2d 555 (Okla.1966). It has also been held that a child support order may not be modified retrospectively. *Catlett v. Catlett,* 412 P.2d 942 (Okla.1966). Relief from a support order can, however, be granted the non-custodial parent if to deny it would be inequitable according to *McNeal.* So the narrow question here is this: would it be inequitable to require the man to pay the arrearage sought by the woman if she previously waived her right to recover it by agreeing to accept a lesser amount?

The thrust of *McNeal* appears to align Oklahoma with a majority of American jurisdictions and England which observe the general rule that in proceedings to enforce an order for child support various defenses are available to the obligor such as laches, estoppel, waiver, acquiescence, release or agreement. *Headley v. Headley,* 277 Ala. 464, 172 So.2d 29 (1964); *Pence v. Pence,* 223 Ark. 782, 268 S.W.2d 609 (1954); *Carson v. Carson,* 179 Cal.App.2d 665, 4 Cal. Rptr. 38 (1960); *Tescher v. Tescher,* 491 P.2d 82 (Colo.Ct.App.1971); *Frazier v. Rainey,* 227 Ga. 350, 180 S.E.2d 725 (1971); *Andersen v. Andersen,* 89 Idaho 551, 407 P.2d 304 (1965); *Johnson v. Johnson,* 26 Ill.App.3d 64, 324 N.E.2d 450 (1975); *McKee v. McKee,* 154 Kan. 340, 118 P.2d 544 (1941); *Sonenfeld v. Sonenfeld,* 331 Mich. 60, 49 N.W.2d 60 (1951); *Cote v. Cote,* 94 N.H. 372, 54 A.2d 360 (1947); *Axelrad v. Axelrad,* 285 A.D. 903, 138 N.Y. S.2d 40 (1955), *aff'd,* 309 N.Y. 687, 128

N.E.2d 326 (1955); *McCrann v. McCrann*, 138 N.E.2d 169 (Ohio Ct.App.1951); *Gould v. Awapara*, 365 S.W.2d 671 (Tex.Civ.App. 1963); *Larsen v. Larsen*, 5 Utah 2d 224, 300 P.2d 596 (1956); *De Blaquiere v. De Blaquiere*, 3 Hagg.Ecc. 322, 162 Eng.Rep. 1173 (1830) (order for support alimony).

In *McNeal* the court concluded that during the time the father cared for the child in his home, it would have been inequitable to grant the mother a child support arrearage judgment where the mother impliedly consented to a departure from the court order by making no complaint for at least 1½ years.

 We do not have here an issue relating to the modification of the child support order, retroactive or otherwise. There was no modification, either constructive, implied or actual. The order remained intact. What we have is simply a question of whether the woman waived her right to enforce the order, or, more precisely, whether by agreement, acquiescence or assent, she waived her right to the indebtedness she now claims is due her. For as the court said in *Turk v. Coryell*, once a support payment becomes delinquent it becomes a debt evidenced by the order and is, as we said earlier, subject to an action for recovery in any court of competent jurisdiction.[3] The obligation having the status of a debt, the obligee's right of recovery is therefore subject to various defenses, including the statute of limitations. *Strecker v. Wilkinson*, 220 Kan. 292, 552 P.2d 979 (1976).

 Here the woman conceded that she agreed to accept an amount for child support less than what had been ordered to be paid by the court. This she had a right to do so long as the children were being adequately provided for. The effect of that agreement was not a modification of the court order but a waiver of her remedial rights of enforcement.

While not at all controlling, it is a significant fact that she made no effort to recover the arrearage until after the man filed a motion for a custodial modification is compatible with her agreement and suggests her request for an arrearage judgment was more or less retaliatory in nature and did not spring entirely from an abiding belief in a meritorious right of recovery, particularly as to the payments made before young Steve began to live with his father in October 1981.

We hold that the woman expressly as well as implicitly waived her right to recover the arrearage in question and that the trial court's judgment of July 19, 1982, should be modified in this regard.

### III

 The second thing the man complains of with regard to the July 1982 adjudication is the order that he pay $130 a month to the woman for the support of the child remaining in her custody. The argument is that having to support the one in his custody as well as the one in the woman's custody constitutes a "double burden" on him.

This stance is both logically and legally untenable. The man's support obligation runs to both children. The trial court had discretion in awarding and setting support for the second child and we are not persuaded that its exercise was abused.

### IV

 Finally we come to the woman's cross-appeal attacking the trial court's failure to sustain her post-judgment motion to award her a judgment for costs and attorney fees against the man and her entrance of an order August 20, 1982, which "modified nunc pro tunc" the July 19, 1982, judgment.

Failure to tax costs and the woman's attorney fees against the man was not an abuse of the trial court's discretion. On balance the equities justify the trial court's

---

**3.** Once the child attains his majority, the order is no longer enforceable by contempt proceedings and an action for debt is the only remedy.

*Reynolds v. Reynolds,* 192 Okl. 564, 137 P.2d 914 (1943).

conclusion that each party should pay his own attorney fees and half the court costs.

■ Parenthetically, we call attention to a misnomer in the August 20 order. Though not complained of by the woman, the order overrules the man's motion for a new trial and also refers to what it calls a "nunc pro tunc" modification of the July 19, 1982, order. A modification the order indeed is, a nunc pro tunc it is not. The office of a nunc pro tunc order is to correct an imperfect memorialization of an earlier order or judgment so that it accurately reflects the order or judgment that was actually entered or rendered. It cannot be used to modify an order or judgment retroactively. *Pettit v. Arkansas Louisiana Gas Co.*, 595 P.2d 793 (Okla.1979).

■ The modification in question came about as a result of an assignment of error set out in the man's timely filed motion for a new trial. The court, of course, had power to modify the order—12 O.S.1981 §§ 1031 and 1031.1—but it was incorrect to refer to it as a nunc pro tunc act.

V

The order of July 19, 1982, is modified by deleting the $2,700 judgment against Steve G. Kissinger. In all other respects the orders of July 19 and August 20, 1982, are affirmed.

DeMIER, P.J., concurs.

STUBBLEFIELD, J., dissents.

STUBBLEFIELD, Judge, dissenting.

I respectfully dissent. Although the majority opinion carefully steers away from any indication that it represents an acceptance of a retrospective modification of a child support order, I believe that is exactly what it does. In doing so, I think the opinion far exceeds the exception to the general rule espoused in *McNeal*. *McNeal* recognized that equitable considerations might allow some variation from the hard and fast provisions of a divorce decree. Specifically the court in *McNeal* ruled that a father should not be responsible for child support for a period of time when the child had been in his custody, except for ongoing child maintenance expenses which mother could prove she incurred in anticipation of continuing custody of the child. It is a far leap from that proposition to the tenet that a mother should be estopped from recovering an arrearage representing an extrajudicial reduction in father's court ordered child support payments to which she grudgingly agreed. This variation in the rule prohibiting retrospective child support modification would remove the matter from the absoluteness of the court's decree and subject it to parental whims often based upon factors other than the best interest of the child. Enforcement of extrajudicially modified support would likewise be stripped of the certainty of the court's decree and replaced with the vagaries of parental memory and motivation. This could certainly work to the detriment of the child involved and may even represent a trap to the paying parent if the court does not subsequently agree that the parties' reduction or modification is equitable. I believe the dissent in *McNeal* points out the very real problem that can arise where the parties are encouraged to modify a court's orders extrajudicially.

The majority likewise substitutes its judgment for that of the trial court. The lower court was faced with a determination of whether the parties' situation called for equitable relief as provided for in *McNeal*. The court found it did not. Based upon the evidence, I find no abuse of discretion in that ruling.

I would affirm the trial court.