**Robert L. THRASH, Appellant,**

v.

**Elysia L. THRASH (now McKindles), Appellee.**

**No. 71173.**

Supreme Court of Oklahoma.

April 2, 1991.

Jon L. Hester, P.C., Oklahoma City, for appellant.

Richard L. Hull, Oklahoma City, for appellee.

ALMA WILSON, Justice:

On March 6, 1980, the parties were divorced. The decree of divorce was a consent order executed by the parties and their attorneys. The portion of the decree dealing with child support provided:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the plaintiff be, and he is hereby ordered and directed to pay support payment for the minor child of the parties in the sum of Two Hundred Twenty and No/100 ($220.00) Dollars per month at the present time and the amount of 15% of his gross salary each month, when his gross salary reaches One Thousand Five Hundred and No/100 ($1,500.00) Dollars per month, but in no event shall the child support be less than $220.00 per month until the said minor child reaches majority or becomes emancipated.

The plaintiff/father (appellant) paid the base $220.00 per month for the child support to the defendant/mother (appellee).

On December 9, 1987, the appellee filed an Application for Contempt Citation alleging that through 1986, the appellant was in arrears for child support in the amount of $31,876.80, based upon his income tax returns for those years. The trial court found the appellant not guilty of indirect civil contempt, but found a child support arrearage existed in the amount of $35,536.65 for the period from December, 1982, through December, 1987. Judgment was granted in that amount. The Court of Appeals reversed the judgment.

This case presents two issues. May an agreed divorce decree provide for automatic increases in child support based upon increases in the non-custodial parent's earnings? Where the custodial parent has failed to demand the increased payments as agreed, should laches apply to bar enforcement of the agreed judgment? We hold that such an agreed decree may be enforced according to the agreement, and that under the facts of this case, laches should not apply.

The appellant argues that the case of *Lairmore v. Lairmore*, 617 P.2d 892 (Okla. 1980), dealt with the issue of whether or not child support can be increased automatically and that the case held that a trial court is prohibited from providing for automatic increases in child support based upon a single criterion. The appellant contends that the language in *Lairmore* and the reasoning behind it precludes an automatic increase in the support he must pay because the clause in the parties' decree authorizing an automatic increase is invalid and unenforceable. We are unable to agree with appellant's reasoning because of distinctions which must be recognized between the *Lairmore* case and the case at bar.

In *Lairmore* a portion of the divorce decree provided for automatic increases in child support on the 10th, 13th, and 16th birthdays of the litigants' children. This Court held that automatic increases in child support based upon a single criterion was speculative and therefore improper. However, we note that the automatic increase

was set by the trial court in *Lairmore* and we view that fact as a crucial distinction. *Lairmore* was an appeal from the ruling of the trial court. In the case at bar, there was no appeal from the decree. The agreed clause providing for automatic increases in support was not challenged until the appellee attempted to enforce it more than seven years after the decree became effective.

This Court has in the past allowed parties to enter consent orders with provisions included which the trial court would not have the authority to make. The Court in *Greeson v. Greeson,* 208 Okla. 457, 257 P.2d 276 (1953), enforced a consent order which retroactively modified child support. That consent order relieved the former husband of liability for unpaid installments accrued up to the time of the entry of the order. The Court acknowledged that a trial court only had the authority to modify an order for child support prospectively. The Court held that while the order was void as a court order, as a consent order it had the nature of a contract, and that in the absence of fraud or mistake, was binding between the parties. *Greeson,* 257 P.2d at 278. The Court then applied rules of contract in construing the agreement.

█ The exceptions to the computation of child support under the Child Support Guideline Schedule, 43 O.S.Supp.1990, § 119, expressed in 43 O.S.Supp.1990, § 118, authorize the trial court to consider agreements for payment of child support where the parties are represented by counsel. The trial court is not bound by such an agreement where the amount of child support so indicated is unjust, inequitable, unreasonable or inappropriate under the

circumstances or not in the best interest of the child. The challenged provision for automatic increases in child support in the agreed decree is not contrary to the public policy of this state. Thus, the agreement by the parties, set forth in the decree and approved by the trial court, providing for future increases in child support based upon the single criterion of the non-custodial parent's increased ability to pay is not unenforceable *per se.*

Under *Lairmore,* evidence of a single criterion such as age of the child, income or location is not sufficient to establish the financial positions and needs of the parties, which must be considered by the trial court in awarding child support. However, neither the duty nor power of the trial court to award or modify child support is at issue.[1] At issue is the enforceability of the parties' increase-of-support agreement as to child support. The evidence presented in this case reveals that such an agreement existed and neither fraud nor mistake was proven. The challenged child support provision in the consent decree of the parties may be judicially enforced.[2]

█ The appellant also argues that the equitable doctrines of waiver, estoppel and laches should bar recovery by the appellee. He cites *Kissinger v. Kissinger,* 692 P.2d 71 (Okla.App.1984) which concluded that the holding of *McNeal v. Robinson,* 628 P.2d 358 (Okla.1981), aligned Oklahoma with a majority of American jurisdictions and England which observe the general rule that in proceedings to enforce an order for child support various defenses are available to the obligor such as laches, estoppel, waiver, acquiescence, release or

---

1. The appellee sought modification of the child support in addition to citation for indirect contempt for failure to pay child support. The trial court denied appellee's motion to modify. Appellee did not appeal that ruling.

2. The dissent erroneously perceives the sum-certain requirement for an alimony award as a requirement for a child support award. [12 O.S.1981, §§ 1278 and 1289, now 43 O.S.Supp. 1990, §§ 121 and 134; *Mayhue v. Mayhue,* 706 P.2d 890, 894 (Okla.1985); and *Vanderslice v. Vanderslice,* 195 Okla. 496, 159 P.2d 560 (1945)]. Neither our statutes nor our decision-

al law confine agreements for child support payments between divorce litigants to the sum-certain rule. The dissent would preclude divorce litigants from the right to agree to future increases in child support. Most often such agreements save court time, court expenses and attorney fees. The trial court is not duty bound to approve of the agreement, and when contested, the trial court has the discretionary power to modify or enforce the agreed provisions as it deems proper. And, the case of *Parkey v. Parkey,* 371 P.2d 711, 714 (Okla.1962) would always allow an inequitable agreement to be set aside.

agreement. We have previously cited *Greeson* which allowed a retroactive modification by agreement. *McNeal* allowed a modification based upon the equitable consideration that the former husband, who had been ordered to pay child support for two children, ceased making those payments when the children moved in with him. The Court did not find any evidence in the record that the former wife had incurred any expenses in anticipation of the return of the children. The appellant is correct in concluding that equitable defenses may be invoked to bar the recovery of delinquent child support payments.

Because the appellee made no attempt to enforce the automatic increases in child support from the time the parties were divorced in March of 1980 until the appellee filed her Application for Contempt Citation on December 9, 1987, the appellant contends that the appellee has waived her right to now collect these sums. We do not agree. The testimony during the hearing on this matter revealed that the appellee did not learn of appellant's increases in wages until March of 1986. Defendant's exhibit 10 is a letter to the appellant dated 5–20–86, revealing that the subject of increasing child support had already been proposed.[3]

The record reveals that the trial court applied a five year statute of limitations, pursuant to this Court's holding in *Hough v. Hough*, 206 Okla. 179, 242 P.2d 162 (1952). The trial court granted a judgment for an arrearage from December, 1982, through December, 1987, which is five years from the time the Application for Contempt Citation was filed. No set of facts has been stated for this Court to conclude that the appellant may in this case defeat the claim for the arrearage by interposing equitable defenses.

■ Even though the appellant is not entitled to relief from payment of the arrearage, he should not be required to pay more than the consent decree required. An

appeal reviewing child support is one of equitable cognizance. This Court will review the whole record, weigh the evidence and affirm the judgment only where the judgment rendered is just and equitable. If the judgment is not just and equitable, this Court will render or cause to be rendered a proper judgment. *Brown v. Brown*, 607 P.2d 1358, 1359 (Okla.1980).

■ The record does not reveal how the trial court calculated the amount of the arrearage. From examining the evidence we conclude that the trial court erroneously failed to allow appellant credit for the monthly payments of $220.00, which all parties agree were made over the five year period from which the arrearage was calculated.

The attorney for the appellant stipulated during the hearing that the Affidavit of Payments attached to the Application for Contempt Citation correctly calculated the amount which comprised fifteen percent of the appellant's income over the applicable five year period. In December of 1982, that amount was $306.45. In 1983, the amount for the year was $4,460.40. In 1984, the amount for the year was $5,365.80. In 1985, the amount for the year was $5,856.00. In 1986, the amount was $9,648.00. The affidavit lists the amount as unknown for 1987. However, Defendant's (appellee's) Exhibit 6 is a copy of appellant's check stub of 12/16/87–12/31/87 which lists his gross pay for the entire year. That amount was $66,878.26. Fifteen percent of that amount is $10,031.74. The sum of these five years is $35,668.39. The judgment was for $35,536.65. These two figures clearly reveal that appellant was given no credit for his monthly payments of $220.00.

In the Affidavit of Payments, appellee asserted that the consent decree required the appellant to pay $220.00 *plus* fifteen percent of his gross salary each month, when his gross salary reached $1,500.00 per month. The testimony of the parties

---

**3.** The appellant and the dissenting opinion view appellee's citation for contempt as an act of retaliation for the earlier court proceeding initiated by the appellant to enforce visitation.

However, Defendant's exhibit 10 reveals that the appellee had urged the appellant to comply with his support agreement a year before he filed his motion.

does not establish the intent of the parties to be that asserted by the appellee. The evidence does establish an intent of the parties that the $220.00 was to be a base amount below which the child support would not fall and that the $220.00 monthly payment would increase to an amount equal to 15% of appellant's gross monthly salary when appellant's monthly salary reaches $1,500.00.[4] Fifteen percent of $1,500.00 is $225.00, thus the child support would be $5.00 greater than the base amount for any month that the appellant's gross salary is $1,500.00. The record does not support a reading of the provision as asserted by appellee, that when the appellant's salary reached $1,500.00, he was suddenly required to pay $445.00 per month in child support.

The judgment in the amount of $35,-536.65 for child support arrearages is reversed and this case is remanded with directions to determine an amount equal to fifteen percent of the appellant's gross salary from December, 1982, through December, 1987, less the amount paid by appellant for child support during that period, all in a manner consistent with the views expressed in this opinion.

Finally, both the appellant and appellee in their respective briefs on the petition for certiorari request that this Court grant costs, including a reasonable attorney's fee on appeal. This Court finds and so orders that each party pay his own costs and attorney's fees on appeal.

CERTIORARI PREVIOUSLY GRANTED, OPINION OF THE COURT OF APPEALS VACATED, JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED WITH DIRECTIONS.

OPALA, C.J., and LAVENDER, DOOLIN, KAUGER and SUMMERS, JJ., concur.

HODGES, V.C.J., and SIMMS and HARGRAVE, JJ., dissents.

SIMMS, Justice, dissenting:

I respectfully dissent. The facts of this case present a good example of the problems inherent in a procedure which allows retroactive enforcement of a judgment that is not for a specific and definite dollar amount. When the parties divorced in 1980, Mr. Thrash was ordered by the court to pay a definite amount of $220.00 for child support. He fully complied with that order, but seven years later he was found to be $35,000.00 in arrears based on the speculative increased income provision which his ex-wife had never attempted to enforce. Appellee filed a citation for contempt in December, 1987, and motion to modify to increase child support in January, 1988. In March, 1988, the trial court denied her motion to modify child support and appellee did not appeal. The court found appellant not guilty of contempt but imposed the arrearage at issue here.

The effect of the practice sanctioned here is to allow the parties to modify a child support obligation based on the single contingency of Mr. Thrash's salary, without the approval of the court. The determination of a sole criterion as sufficient to trigger an automatic modification in advance of any application to the court for modification, and without a court order imposing same, is at odds with our established divorce procedure. It removes the district court from its traditional, and statutory, role in divorce litigation. Enforcement of such an uncertain and unpronounced automatic increase is, as seen in the instant case, most difficult if not impossible.

It has been pointedly observed that the *enforcement* of an escalation clause is not automatic but remains a *judicial* responsibility subject to *judicial* supervision. In *Petersen v. Petersen*, 85 N.J. 638, 428 A.2d 1301 (1981), 19 ALR 4th 822, the court held

---

**4.** The dissenting opinion by stating that the appellant testified at length regarding his lack of knowledge of the actual terms of the automatic increase provisions, would make it appear that the appellant had *no* understanding of the provisions. The testimony of appellant is that he understood the agreement was that he would pay $220.00 *or* 15% of his gross monthly income each month, whichever was greater. He paid the $220.00. Appellant did testify that he had not understood the agreement to require him to pay $220.00 *plus* 15% until his attorney pointed that possibility out to him.

that while agreements dealing with marital support obligations tied to an escalator formula are not *per se* invalid, the enforcement of such agreements implicates much larger concerns and remains ultimately a matter demanding judicial assessment and determination. The court found that as with all support provisions, those calling for automatic increases can be judicially enforced only where all equitable criteria are satisfied. In *Herron v. Herron* 457 N.E.2d 564 (Ind.App.1983), an escalation clause was upheld as valid where the support obligation was to be reviewed and fixed by the court on the 31st day of December of each calendar year.

The terms of the automatic increase in the instant matter were never fixed or pronounced by the trial court. In addition to being speculative, they are vague, indefinite and uncertain. Mr. Thrash testified at length regarding his lack of knowledge of the actual terms of the automatic increase provisions. Any attempt to claim that the amount of appellee's obligation was clear cannot stand in light of the fact that in the process of this appeal two courts have come up with different amounts due and owing.

It is axiomatic that in a divorce action the court performs its statutory duty of providing for the support of minor children of the parties by looking to all facts and circumstances affecting the parties, and that justice and equity are the governing considerations. Also that the court's power to modify an award for child support based on a material change in circumstances is not affected by the fact that the award rests in whole or in part on an agreement of the parties. An agreement of the parties as to support is not binding upon the court. *Parkey v. Parkey*, 371 P.2d 711 (Okla. 1962). *Donahoe v. Alcorn*, 188 Okl. 305, 108 P.2d 786 (1940); *Bynum v. Bynum*, 184 Okl. 36, 84 P.2d 424 (1938). Would this Court's position be the same if this agreement between the parties decreased appellant's child support obligation based on a single contingency or hypothetical event agreed to by the parties? I expect under those facts we would find that the self-adjusting child support was improper as contrary to the statutory power and continuing authority of the court to provide, in its discretion, for the support of minor children based on the needs and welfare of the child and consideration of all relevant circumstances.

The protection afforded the rights of minors and the parties by the continuing jurisdiction of the court over the provisions of the divorce decree should not be cast aside by the consent nature of this decree. The same interests and policy concerns which were considered by our decision in *Lairmore v. Lairmore*, 617 P.2d 892 (Okla. 1980), are placed in jeopardy here and should be afforded the same protection.

I am unpersuaded by the majority's contention that the new Child Support Guideline Schedule supports its holding allowing automatic modification of child support by agreement of the parties based on a single contingency, without involvement of the trial court through judicial adjudication of support by modification procedures. The authorization of 43 O.S.Supp.1990, § 118, for parties represented by counsel to agree on an initial dollar amount of child support other than the amount which would result from application of the guidelines is not relevant to the escalation clause question before us.

Contrary to the implication of the majority opinion, the child support guideline provisions clearly contemplate that modification of support will be made by the *court*, in a modification proceeding based on well recognized factors. Section 118(19) provides:

> "Child support orders may be modified only upon a material change in circumstances. If the court finds there is a basis for modification, the child support guidelines provided in the act shall be used in computing child support, subject to the court's discretion to deviate from the guidelines where the amount of support is unjust, inequitable, unreasonable or inappropriate under the circumstances, or not in the best interest of the child or children involved, and such deviation is supported by specific findings.

The enactment of these guidelines alone shall not constitute a material change in circumstances."

I would also hold that even if the support arrearage is valid, the appellee is barred from attempting to recover same by laches. Having made no attempt to establish or enforce this automatic clause for over six years, I would hold appellee is now estopped from doing so. It was only after appellant filed a motion to set specific visitation in May of 1987 that appellee commenced the contempt proceeding in December of 1987. Appellant relies correctly on the decisions in *Kissinger v. Kissinger*, 692 P.2d 71 (Okla.App.1984), and *McNeal v. Robinson*, 628 P.2d 358 (Okla.1981), to support his position that the appellee's uncomplaining consent to a departure from the terms of the decree have estopped her right to now enforce collection of those sums.

The reasoning of the Court in *Lairmore*, supra, should be applied to the facts before us and we should uphold the Court of Appeals' reversal of the trial court's judgment.