1999 OK CIV APP 38

**Mary Ann AGUERO, Appellant,**

v.

**Manuel AGUERO, Jr., Appellee.**

No. 91,096.

Court of Civil Appeals of Oklahoma, Division No. 2.

Feb. 2, 1999.

Belva Brooks Barber, Barber and Barber, Poteau, Oklahoma, For Appellant.

Susan Thomas Mixon, Poteau, Oklahoma, For Appellee.

## OPINION

BOUDREAU, V.C.J.

¶1 Mother Mary Ann Aguero appeals the trial court's post-divorce decree order determining she is not entitled to certain back child support from Father Manuel Aguero, Jr. The issue on appeal is whether the trial court erred when it allowed Father to assert the equitable defenses of laches, waiver, and estoppel to Mother's claim for child support arrearages. After a review of the facts and applicable legal authorities, we find that it did. Accordingly, we reverse the trial court's order and remand the matter with instructions.

¶2 Father and Mother married in 1965 and divorced in September 1987. Four children were born of the marriage, three of whom were minors at the time of the divorce. Upon divorce, Mother was awarded custody of the three minor children, and Father was ordered to pay child support in the amount of $600 per month. It is undisputed that Father never paid the entire $600 per month in child support.

¶3 Other relevant facts are as follows. In 1988, the Oklahoma Department of Human Services (DHS), on behalf of Mother, filed an application for contempt citation and requested that an alleged arrearage of $6,340 be reduced to judgment. Father was served notice by mail in Texas but did not appear, and a bench warrant was issued. However, no hearing was held nor was a dispositional order as to this contempt citation made, except that the bench warrant was recalled in 1994.

¶4 Father continued to provide Mother with some child support, but only on an irregular basis and never in the $600 per month amount specified in the divorce decree. Therefore, in August 1997, DHS again filed an application for contempt citation, this

time alleging child support arrearages of $44,650 (including interest), and requesting that the same be reduced to judgment. Thereafter, in December 1997, Father filed a motion to modify custody as to one of the two children who were still minors and an application to enter a temporary order abating child support until resolution of the custody matter. A hearing on the issues was set for January 21, 1998.

¶5 Prior to the hearing, the parties resolved the child custody and prospective child support issues. At the hearing, the application for contempt citation was amended to a motion to reduce the child support arrearages to judgment.

¶6 During the hearing, the parties offered slightly different testimony relating to Father's previous child support payments. Mother claimed she had received a total of $26,175 of the $52,800 child support which should have been paid for the period of September 1987 to January 1998 as specified by the divorce decree, leaving a delinquency of $26,625, excluding accrued interest. Father claimed he had paid a total of $30,000 child support, leaving a delinquency of $22,800, excluding accrued interest.

¶7 Although Father acknowledges Mother never expressly agreed to accept an amount of child support less than the amount ordered by the decree, he testified Mother never told him there was a problem with not paying the full amount of child support. Mother contends she never expressly or impliedly agreed to accept any lesser amount of child support. When asked about her previous attempt to collect the child support arrearages through DHS, Mother stated "the reason I dropped it was because I had my three children I was trying to raise. I would—When I did get a check, I would have to bring it up here, I'd have to wait another week. At the time when I got the check, I needed it then." Mother also testified that she didn't hire a lawyer to take Father back to court to collect back child support because she didn't feel like she could afford it.

¶8 During closing statements, Father's counsel, asserting Mother had consented to receiving less than the $600 per month specified in the divorce decree, asked the trial court for "equitable relief." Citing *Kissinger v. Kissinger*, 1984 OK CIV APP 52, 692 P.2d 71, and *Thrash v. Thrash*, 1991 OK 32, 809 P.2d 665, Father's counsel claimed Mother had "acquiesced" in Father's noncompliance with the divorce decree and argued Mother "should not be allowed to benefit now for her failure to act in years past." Requesting that "equitable consideration be given to what [Father] has done and what [Mother] has consented to all these years," Father's counsel contended that, with the exception of $225 per month for the second half of 1997, no past due child support was owed.

¶9 On January 26, 1998, the trial court issued an order granting Mother judgment in the sum of $3,150. In arriving at this figure, the court applied the law of waiver and equitable estoppel to limit the amount of accrued child support Mother could recover. Mother now appeals the judgment.

¶10 In prohibiting Mother from collecting the full amount of past due child support, the trial court allowed Father to invoke the equitable defenses of waiver and estoppel. The preliminary question of whether such defenses are available in an action for collection of child support which has become a judgment by operation of law pursuant to 43 O.S. Supp.1998 § 137 is a legal question.[1] Contested issues of law are reviewable in all actions, suits, and proceedings by a de novo standard. *Weeks v. Cessna Aircraft Co.*, 1994 OK CIV APP 171, ¶5, 895 P.2d 731, 733. Review of law is called "de novo," which means no deference, not necessarily a full rehearing or new factfinding. *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

¶11 On appeal, Mother argues the trial court incorrectly applied equitable principles of waiver and estoppel in determining the amount of Father's child support arrearage.

1. Title 43 O.S. Supp.1998 § 137 provides: "Any payment or installment of child support ordered pursuant to any order, judgment, or decree of the district court ... is, on and after the date it becomes past due, a judgment by operation of law." Section 137 further provides that a child support judgment shall not become dormant for any purpose.

To adequately evaluate Mother's argument, a detailed analysis of the three seminal Oklahoma cases is necessary: *Kissinger v. Kissinger*, 1984 OK CIV APP 52, 692 P.2d 71, upon which the trial court relied in allowing Father to interpose the equitable defenses of waiver and estoppel to Mother's claim for past due child support; *McNeal v. Robinson*, 1981 OK 43, 628 P.2d 358, upon which the court of appeals based its *Kissinger* decision; and *Thrash v. Thrash*, 1991 OK 32, 809 P.2d 665, a supreme court decision subsequent to *Kissinger*. We review them in chronological order.

¶ 12 In *McNeal*, the parties divorced, mother received custody of the two minor children, and father was ordered to pay child support. *McNeal*, 1981 OK 43, ¶ 2, 628 P.2d at 359. When the children moved in with father, he stopped making child support payments to mother. *Id.* at ¶ 3, 628 P.2d at 359. After one of the children moved back with mother, she filed an application to modify the divorce decree to increase child support and also sought a citation for contempt of court for the arrearage. *Id.* at ¶ 5, 628 P.2d at 359. Father then moved to modify the divorce decree to retroactively decrease the child support and also petitioned for permanent custody of the children. *Id.* The trial court gave father custody of the child who had continued to reside with him, but also ordered father to pay mother back child support, denying him credit for the time the children lived with him. *Id.* at ¶ 6, 628 P.2d at 359.

¶ 13 The facts of *McNeal* presented a question of first impression: "should a father, ordered to pay $150.00 per month child support, be allowed a credit against an arrearage in child support for the time when the children were living with him, although the original divorce decree had not been modified." *Id.* at ¶ 1, 628 P.2d at 359. The supreme court acknowledged that, although there can be no retroactive modification of a divorce decree by agreement between the parties without court approval, the "original absolute rule against retroactive modification should admit of some qualification." *Id.* at ¶ 11, 628 P.2d at 360. The court also recognized that other jurisdictions have allowed a father "credit against child support arrearages for expenses accrued as a result of his custody of the child, or for other voluntary expenditures made on behalf of the child, if equity would so dictate under the particular circumstances, provided the allowance of credit would not do an injustice to the mother." *Id.* at ¶ 8, 628 P.2d at 359.

¶ 14 Therefore, the Oklahoma Supreme Court held, "In the case at bar, the equities would permit [father] to receive credit for the payments made by him during the time his children lived with him." *Id.* at ¶ 13, 628 P.2d at 360. In reaching this decision, the court reasoned that, "[b]ecause child support payments are for the benefit of the children, rather than the custodial parent, it would be inequitable to effectively force [father] to pay twice for their support." *Id.* As a result, *McNeal* provided a trial court some "equitable flexibility" in determining arrearages by authorizing it to allow a parent credit for alternative compliance with a child support order.

¶ 15 Relying on *McNeal*, several years later, the Oklahoma Court of Civil Appeals decided *Kissinger v. Kissinger*, 1984 OK CIV APP 52, 692 P.2d 71, expanding *McNeal* far beyond what we perceive as its intended reach. In *Kissinger*, the parties divorced, mother was granted custody of the two minor children, and father was ordered to pay child support in the amount of $150 per month per child. Father, alleging the parties subsequently agreed to a lesser amount of child support, did not comply with the support order.[2] *Id.* at ¶ 1, 692 P.2d at 73. Father paid mother $200 per month child support ($100 per child) until the older child began residing with father, at which time he

---

2. At trial, father testified:
"We discussed the fact that with all the bills that I was having to pay, that I could not manage to pay a hundred and fifty dollars a month per child [as ordered] and continue to pay all the other bills that I was to pay, plus have money for my own living expenses.... I offered that I could pay a hundred dollars a month for each child.... She agreed to it at that time."
*Id.* at ¶ 7, 692 P.2d at 73 (omissions in original).

began paying mother $100 per month child support. *Id.* at ¶ 8, 692 P.2d at 73.[3]

¶ 16  Father then requested the divorce decree be modified to grant him custody of the older child. *Id.* at ¶ 1, 692 P.2d at 73. In response, mother made a claim for child support arrearages. *Id.* Father denied he was in arrears by reason of the agreement with mother to pay less than the ordered support and argued she should be estopped from enforcing her claim for arrearages. *Id.* The trial court rejected father's defense and entered a judgment for past due child support. *Id.* at ¶ 2, 692 P.2d at 73.

¶ 17  On review, the court of appeals phrased the issue thus: "What we have is simply a question of whether the woman waived her right to enforce the order, or, more precisely, whether by agreement, acquiescence or assent, she waived her right to the indebtedness she now claims is due her." *Id.* at ¶ 21, 692 P.2d at 75. Holding mother "expressly as well as implicitly waived her right to recover the arrearage in question," the court of appeals reversed and modified the trial court's order, deleting the judgment against father for the arrearage. *Id.* at ¶ 24, 692 P.2d at 75.

¶ 18  The court's decision appears to rest on two conclusions drawn from its interpretation of *McNeal*: first, that "[r]elief from a support order can ... be granted the noncustodial parent if to deny it would be inequitable"; and, second, that "[t]he thrust of *McNeal* appears to align Oklahoma with a majority of American jurisdictions and England which observe the general rule that in proceedings to enforce an order for child support various defenses are available to the obligor such as laches, estoppel, waiver, acquiescence, release or agreement." *Id.* at ¶¶ 18–19, 692 P.2d at 74. A closer inspection, however, discloses that neither of these conclusions is correct.

¶ 19  First, the *McNeal* supreme court did not contrive any broad equitable exceptions for "granting relief from a support order" as deduced by the *Kissinger* court of appeals. Rather it held only that, "[i]n the case at bar, the equities would permit [father] to receive credit for the payments made by him during the time his children lived with him." *McNeal,* 1981 OK 43, ¶ 13, 628 P.2d at 360. Second, although review of *McNeal* does reveal citation to case authority from other jurisdictions, *all* of the cases cited involve allowing the obligor credit for sums actually expended for the support of the child under various circumstances where a credit could be equitably allowed without injustice to the custodial parent. Additionally, the *McNeal* court never used the words equitable defenses, laches, estoppel, waiver, acquiescence, release, or agreement. *McNeal* and the cases cited merely stand for the proposition that equitable relief is proper in instances where the noncustodial parent has made voluntary expenditures as an alternate manner of satisfying child support obligations.

¶ 20  In a few words, *McNeal* does not support the far-reaching conclusions announced in *Kissinger*. *McNeal* simply gives trial courts the equitable "flexibility" of crediting direct or alternative support to the children by the noncustodial parent. It did not even consider, let alone approve, the operation of equity to excuse or give relief to a noncustodial parent for *noncompliance*. As stated in the *Kissinger* dissent, "It is a far leap from [the *McNeal* proposition] to the tenet that a mother should be estopped from recovering an arrearage representing an extrajudicial reduction in father's court ordered child support payments to which she grudgingly agreed." *Kissinger,* 1984 OK CIV APP 52, dissent ¶ 1, 692 P.2d at 76 (Stubblefield, J., dissenting).

¶ 21  In *Thrash v. Thrash,* 1991 OK 32, 809 P.2d 665, the issue of whether equitable defenses could be invoked in a child support collection action was again presented to the supreme court. The 1980 divorce decree, a

3.  According to the court, mother's testimony revealed:

> Her acceptance of the reduced child support payment was for an indefinite period and there was no agreement that he would later pay the amount of reduction as arrearage. And while she said she "would have assumed that he would have made some offer to ... pay the arrearage," she did accept the reduced amount "as full payment" up until the older boy began to live with his father.

*Id.* at ¶ 17, 692 P.2d at 74 (omission in original).

consent order executed by both parties, provided that father was to pay $220 per month child support until his gross salary reached $1,500, at which time father was to pay child support in an amount equal to 15% of his gross salary. *Id.* at ¶ 1, 809 P.2d at 666. Seven years after the divorce, mother filed an application for contempt citation alleging that through 1986 father was in arrears for child support in the amount of $31,876.80, based upon his income tax returns for those years. *Id.* at ¶ 2, 809 P.2d at 666.

¶ 22 The trial court found father not guilty of indirect civil contempt, but entered judgment against father for the arrearage. On appeal, father argued that, since mother made no attempt to enforce the automatic increases in child support based on his gross salary from the time the parties were divorced until 1987, the equitable doctrines of waiver, estoppel, and laches should bar mother's recovery of the arrearage. *Id.* at ¶ 9, 809 P.2d at 667–68. The supreme court disagreed, opining, "No set of facts has been stated for this Court to conclude that the appellant may in this case defeat the claim for the arrearage by interposing equitable defenses." *Id.* at ¶ 11, 809 P.2d at 668.

■ ¶ 23 In reaching this decision, the supreme court made only one general state-ment regarding the availability of equitable defenses, a statement not essential to its ultimate holding in the case. The supreme court merely commented, "[Father] is correct in concluding that equitable defenses may be invoked to bar the recovery of delinquent child support payments." *Id.* at ¶ 9, 809 P.2d at 668. However, because this interjection follows the court's summary of its prior decision in *McNeal,* the significance and scope of this remark must be ascertained in light of the holding of *McNeal.* The court describes the portent of *McNeal* as follows:

> *McNeal* allowed a modification based upon the equitable consideration that the former husband, who had been ordered to pay child support for two children, ceased making those payments when the children moved in with him.

*Thrash,* at ¶ 9, 809 P.2d at 668. Viewing these two statements together, particularly in light of the court's conclusion that no waiver on mother's part had been demonstrated, we do not believe the *Thrash* court intended to expand the holding in *McNeal* to the extent of recognizing the whole gamut of equitable defenses[4] in child support collection actions.[5]

■ ¶ 24 Based on our scrutiny of the relevant Oklahoma cases, we cannot allow to

---

4. "Equitable defenses" is indeed a broad category including the doctrine of unclean hands, laches, estoppel, waiver, acquiescence, agreement, and release. *See generally Thrash v. Thrash,* 1991 OK 32, ¶ 9, 809 P.2d 665, 667–68; *Krumme v. Moody,* 1996 OK 140, 910 P.2d 993.

5. In order to present a complete review of Oklahoma law on this issue, we briefly mention two additional cases: *Hyde v. Hyde,* 1992 OK CIV APP 161, 843 P.2d 393, and *Torres v. Torres,* 1998 OK CIV APP 18, 956 P.2d 166. In *Hyde,* the trial court determined the five-year limitation period for collection of child support began to run five years prior to mother's application for contempt citation and hence mother was prevented from collecting a child support arrearage. (This case was obviously decided under prior statutory law. Title 43 O.S. Supp.1998 § 137 now provides that a past due child support payment becomes a judgment by operation of law and shall not become dormant for any purpose.) On review, the court of appeals reversed and remanded with directions to the trial court to hear the merits of mother's equitable-estoppel rebuttal to father's statute of limitations defense. Citing *McNeal* and *Kissinger,* the court declared "Oklahoma has long recognized equitable defenses in child support enforcement actions." *Id.* at ¶ 4, 843 P.2d at 395. We view this declaration as an uncritical acceptance of the *Kissinger* court's misconstruction and over-extension of *McNeal.*

In the more recent case of *Torres,* father asserted the parties agreed to an amount less than the court-ordered child support obligation, and, since he had relied on the agreement to his detriment, mother had waived her right to collect the delinquency. *Torres,* 1998 OK CIV APP 18, ¶ 3, 956 P.2d at 167. The trial court found mother had waived her right to receive the court ordered child support and mother appealed. On review, the court of appeals reversed in part because its examination of the testimony revealed that a waiver was not established by the facts of the case. *Id.* at ¶ 9, 956 P.2d at 168. In his brief, Father cites *Torres* for the proposition that equitable defenses are available if such defenses can be proven. We disagree. The court of appeals specifically declined to consider the matter, stating, "Since we find that the facts do not support a waiver, we do not address the issue of equitable defenses in an action to collect child support." *Id.* at ¶ 11, 956 P.2d at 168 n. 2.

stand the trial court's conclusion that Mother waived her right to child support. We believe the status of Oklahoma jurisprudence in regard to the interposition of "equitable defenses" in a child support collection action is still limited to the facts and holding of *McNeal*: a child support obligor may be given some form of credit against an arrearage for alternative compliance with the support order. Nothing in the subsequent case law convinces us that *McNeal's* equitable recognition of "alternative compliance" has been, or should be, expanded to include the divergent concept of "noncompliance due to laches, estoppel, waiver."

¶ 25 In addition to being supported by Oklahoma case law, our conviction that equitable defenses are not available to excuse noncompliance with a support order is clearly supported by public policy. The award of child support is for the benefit of the child. Children are entitled to support from both of their parents, and one parent should not be able to waive a child's right to support from the other.[6] Recognizing the entire gamut of equitable defenses would afford parents too much discretion in complying with court-ordered support payments by removing the matter from the absoluteness of the court's decree and subjecting it to parental whims often based upon factors other than the best interest of the child.

¶ 26 Additionally, because the application of equitable defenses is so factually intensive, were we to allow them to justify noncompliance with support orders, they could potentially be raised in every child support collection dispute. Resolution of child sup-

port collection issues would then be dependent upon lengthy hearings where parties waged the ultimate "he said, she said" battle. The *Kissinger* dissent aptly expressed this concern:

> Enforcement of extrajudicially modified support would likewise be stripped of the certainty of the court's decree and replaced with the vagaries of parental memory and motivation. This could certainly work to the detriment of the child involved and may even represent a trap to the paying parent if the court does not subsequently agree that the parties' reduction or modification is equitable.

*Kissinger v. Kissinger*, 1984 OK CIV APP 52, dissent ¶ 1, 692 P.2d at 76 (Stubblefield, J., dissenting).

¶ 27 Finally, by enacting the Oklahoma Child Support Guidelines in 1989, the legislature illustrated its intent to limit the discretion of the trial court in setting child support obligations. To give the trial court the discretion to consider equitable defenses for nonpayment of the support would undermine the very certainty the Guidelines seek to establish.[7] As a result, public policy mandates ignoring equitable defenses in child support collection actions in order to ensure predictably and protect the rights of children to support from both of their parents.

¶ 28 Even if we were to hold that the equitable defenses raised by Father were available in this action, they would not entitle him to relief from his child support obligation under the circumstances presented. The facts do not indicate that the elements of laches and estoppel are present.[8] Nor do the

6. "Parents have a legal duty to support and educate their children and to prevent them from becoming public charges." *Burrows v. Burrows*, 1994 OK 129, ¶ 25, 886 P.2d 984, 991 (citing *LeCrone v. LeCrone*, 1979 OK 98, ¶ 3, 596 P.2d 1262, 1264). "Maintenance of a minor child is an enforceable parental duty which cannot be shifted as a burden on the shoulders of others." *Id.* at ¶ 17, 886 P.2d at 991 n. 25 (citing *Hart v. Hart*, 177 Okla. 428, 60 P.2d 747 (1936)).

7. Eliminating the availability of equitable defenses in collection actions should not inhibit judicial discretion in granting modification or giving credit when an obligor parent has alternatively

complied with the child support obligation, such as in *McNeal*. Allowing alternative compliance provides fairness to the obligor parent without undermining the effectiveness of child support enforcement. *See* J. Eric Smithburn, *Removing Nonconforming Child Support Payments from the Shadow of the Rule Against Retroactive Modification: A Proposal for Judicial Discretion*, 28 J. Fam. L. 43 (1989–90).

8. Although Father does not use the term "laches" in presenting his defense, he does focus on the time delay aspect of Mother's claim and also relies on *Thrash v. Thrash*, 1991 OK 32, 809 P.2d 665, which involved the equitable defense of laches.

facts of the case demonstrate Mother waived her right to child support.

¶ 29 Laches constitutes an affirmative defense to stale claims. *Sooner Fed. Sav. & Loan Assoc. v. Smoot,* 1995 OK 31, ¶ 21, 894 P.2d 1082, 1090. The party invoking the doctrine of laches has the burden of proving he suffered a measure of irreparable damage or loss due to a change of conditions relying on the inaction and indifference of the opposing party. *Clark v. Unknown Heirs of Osborn,* 1989 OK 145, ¶ 4, 782 P.2d 1384, 1386. In other words, laches is not merely a delay, but a delay which works to the disadvantage of another. *Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997). Here, Father has not alleged the requisite irreparable damage or loss in reliance on Mother's inaction. Absent a demonstration of detrimental reliance, Father cannot raise laches as a defense to Mother's claim for past child support.

¶ 30 The essence of equitable estoppel is that it prevents "one party from taking a position which is inconsistent with an earlier action that places the other party at a disadvantage, where that party has, in good faith, relied on such representation or position." *Sullivant v. City of Oklahoma City,* 1997 OK 220, ¶ 11, 940 P.2d 220, 223. More specifically,

> "Equitable estoppel is the result of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might have otherwise existed as against a person who, in good faith, relied on such conduct and has been thereby led to change his position to his detriment, and who has acquired some corresponding right. It holds a person to a representation made, or a position assumed, where otherwise inequitable consequences would result to another, who, having a right to do so under the circumstances, has in good faith, relied thereon. Whether the doctrine of equitable estoppel is applicable depends on the facts and circumstances of each case."

*First State Bank v. Diamond Plastics Corp.,* 1995 OK 21, ¶ 39, 891 P.2d 1262, 1272 (quoting *Apex Siding & Roofing Co. v. First Fed.*

*Sav. & Loan Ass'n of Shawnee,* 301 P.2d 352, 355 (Okla.1956)).

¶ 31 The elements of estoppel are not present in this case. Mother has made no representation, nor assumed any position upon which Father has detrimentally relied. "Estoppel is used to prevent injustice and promote justice and should not be used to work a positive gain to a party." *Id.* Mother has taken no course of action which works an injustice on Father. Being required to pay child support at the level set by the court cannot be considered an injustice. Accordingly, Father cannot raise the defense of equitable estoppel to Mother's claim for past child support.

¶ 32 "Waiver consists of an actual intention to relinquish a known right, either expressly or by conduct that warrants an inference of such an intent to relinquish." *Torres v. Torres,* 1998 OK CIV APP 18, ¶ 8, 956 P.2d 166, 167 (citing *Crowell v. Thoreau Center, Partnership,* 1981 OK 84, ¶ 2, 631 P.2d 751, 752). Father contends that, when Mother "failed to pursue her [1988] contempt action, she indicated her intent to not pursue [Father] for back child support." In other words, Father argues Mother waived her right to the full amount of support ordered in the decree. We strongly disagree.

¶ 33 On the contrary, as indicated by her testimony, Mother's failure to pursue her contempt action demonstrated only that the DHS process had the effect of delaying her access to the support, which she needed sooner as opposed to later. On the facts of this case, Father is in effect arguing that acceptance of partial payment is tantamount to waiver. We decline to accept this notion. Were we to do so, child support obligors would next argue that, when an obligee doesn't complain about the timeliness of a payment, it is also waived.

¶ 34 Undoubtedly, child support obligees need child support to provide for their children and the children are entitled to support from both of their parents. When an amount of child support has been ordered by the court, we think it unfair to burden the obligee parent by requiring extra affirmative

actions in the collection of the support from the obligor. To give credence to Father's equitable defense of waiver would have this effect. We believe the better rule is to hold the obligor responsible for the child support ordered in the decree, unless and until, it has been modified by the court. Accordingly, we reverse the trial court's order and remand for a determination of Father's child support delinquency without regard to waiver, laches, and estoppel.

STUBBLEFIELD, P.J., and REIF, J., concur.

