2001 OK CIV APP 87

Cheryl Leanne HOLLINGSWORTH,
formerly Underhill,
Plaintiff/Appellant,

v.

Richard Paul UNDERHILL,
Defendant/Appellee.

No. 94,232.

Court of Civil Appeals of Oklahoma,
Division No. 1.

June 8, 2001.

Jeff Shaw, Lawton, for Appellant.

Jay S. Walker, Lawton, for Appellee.

JOPLIN, J.:

¶ 1 Cheryl Leanne Hollingsworth (Mother) seeks review of the trial court's order granting judgment to Richard Paul Underhill (Father) on Father's claim to reimbursement for overpayment of child support. In this proceeding, Mother asserts the trial court erred as a matter of both fact and law in granting Father relief. Finding Mother's arguments well-taken, we hold the order of the trial court should be reversed.

¶ 2 During the twenty-year marriage of Mother and Father, two children were born, both minors at the time of the parties' separation. Upon the parties' divorce in 1991, the trial court awarded custody of the children to Mother, and ordered Father to pay $447.00 per month in child support less a credit to Father for $50.00, purportedly representing his share of the monthly medical insurance premiums he paid, according to the statutory guidelines. However, the child

support worksheet, representing the trial court's calculation of Father's obligation, contained at least one mathematical error. Notwithstanding the decreed obligation or the worksheet calculations, Father paid $450.00 per month to Mother for the support of the two minor children from and after entry of the decree.

¶ 3 Almost eight years later, on April 23, 1999, Mother filed a motion to modify child support, alleging her substantially increased need and Father's increased ability to pay. She also alleged Father's over-statement of the children's medical insurance premiums at the time of entry of the divorce decree, for which she prayed for an accounting. Father responded, denying a substantial change of circumstances, alleging only a "moderate" increase in salary, and opposing Mother's prayer for an accounting of the medical insurance premiums as an impermissible collateral attack on the 1991 divorce decree. By subsequent amendment, Father admitted a substantial increase in income and agreed to modification of his child support pursuant to the child support guidelines, but again denied Mother's entitlement to an accounting for overpayment of insurance premiums. Father raised no issue concerning his alleged overpayment of child support in either his original or amended response.

¶ 4 On August 17, 1999, the parties appeared and presented evidence in support of their respective positions. Upon consideration of the evidence and argument, the trial court modified (increased) Father's child support obligation based on Father's increased income. The trial court also determined Father's actual insurance premiums to be $31.72 per month—as opposed to the $100.00 claimed in the 1991 child support calculation—but denied Mother's request for an accounting and recovery of the excess premiums she contributed. The trial court lastly set a hearing for September 23, 1999 to determine the amount of child support that had accrued since filing of Mother's motion to modify.

¶ 5 On that date, the parties appeared, and for the first time, Father asserted a demand for Mother's reimbursement of his alleged overpayments of child support for the preceding eight year period. Father argued that in view of the mathematical errors in original child support calculation, he should only have paid $397.50 per month *ab initio*, and was entitled to a judgment against Mother for the amount of his consequent overpayments. Mother objected to Father's prayer for credit as barred by limitations, laches and estoppel.

¶ 6 The trial court determined Father had not given Mother proper notice of his "motion" and continued the matter to December 1, 1999.[1] At the December hearing, the trial court held Mother was entitled to $1,466.22 for child support from the date her motion to modify was filed. However, the trial court also held Father was entitled to reimbursement for his overpayment of child support since entry of the divorce decree totaling $4,986.50, and rendered judgment accordingly against Mother for $3,526.28. Mother appeals.

¶ 7 While we find no Oklahoma precedent directly on point, the Texas courts have consistently recognized no authority *requiring* a credit to the payor spouse for payment of child support in excess of the court-ordered obligation:

> [There is] no authority for the proposition th[at] previously made, excessive contributions for child support must be credited by the trial court in a child support enforcement action. A parent may always voluntarily provide more support for a child than is required by court order.

*Lewis v. Lewis*, 853 S.W.2d 850, 854 (Tex.Civ. App.1993). *See also, Norman v. Norman*, 692 S.W.2d 655 (Tex.1985) (child support obligation not like a commercial installment contract for which prepayments may be taken into account); *In re McLemore*, 515 S.W.2d 356, 358 (Tex.Civ.App.1974) (voluntary payments in fulfillment of common law child support obligation "not necessarily ... offset against a statutory obligation enforced

---

1. Mother's counsel received a facsimile the day prior to the hearing regarding this issue. Father, however, failed to file any proper motion, supporting documentation, or brief in support with authorities cited, pursuant to Rule 4.

by a court order.") Other appellate courts have disallowed credit for voluntary overpayments of child support by an ex-spouse, even if the payments are made under the mistaken belief that they are legally required. *See, e.g., Lehr v. Lehr*, 317 Ill.App.3d 853, 251 Ill.Dec. 336, 740 N.E.2d 417 (2000); *Samples v. Kouts*, 954 S.W.2d 593, 600 (Mo.App.1997) (absent agreement, voluntary overpayments of required child support made by the obligor in excess of that ordered by the court will not be credited against future child support payments.)

■ ¶ 8 It is also recognized that "special circumstances of an equitable nature ... may justify a court crediting (voluntary) payments against the accrued support owing when that can be done without injustice to the one to whom the divorce decree directed the installments be paid." *Schafer v. Schafer*, 95 Wash.2d 78, 621 P.2d 721 (1980). *See also, Juttelstad v. Juttelstad*, 1998 SD 121, 587 N.W.2d 447 (ex-wife unjustly enriched by overpayment of child care costs, and trial court's allowance of credit affirmed); *Loomis v. Loomis*, 221 Ark. 743, 255 S.W.2d 671 (1953) (absent agreement of the parties, extent of credit for overpayment constitutes question of fact for the trial court; held, trial court's judgment denying father credit for overpayments affirmed.) Ordinarily, the burden of proof of establishing the right to equitable relief is upon the obligor. *Schafer*, 621 P.2d at 723.

¶ 9 Oklahoma law generally grants the courts of this state broad discretion to set and modify child support orders. *See, e.g., Aguero v. Aguero*, 1999 OK CIV APP 38, 976 P.2d 1088; *Harris v. Harris*, 1974 OK CIV APP 32, 530 P.2d 147; *Wendel v. Wendel*, 1958 OK 242, 331 P.2d 370. At least one prior Oklahoma appellate decision has permitted a credit for overpayment of child support as a matter within the discretion of the trial court. *Harris*, 1974 OK CIV APP 32, ¶ 13, 530 P.2d at 149–150 (order allowing setoff against future payments addressed to discretion of trial court if equitable and working no injustice). *See also, Tortorelli v. Tortorelli*, 1995 OK CIV APP 99, ¶ 7, 901 P.2d 237, 239 (cause remanded for calculation of overpayment credit to be allowed against future child support obligation.)

■ ¶ 10 In the present case, Mother testified that she and Father recognized a mistake in the child support guidelines calculation the day the decree was entered, that they agreed Father would pay $447.50 per month (rounded, apparently by Father, to $450.00), and that Father paid accordingly. Father denied existence of such an agreement with Mother, and that he mistakenly read the decree to require his payment of $447.50 per month. Father also averred that he voluntarily paid $450.00 per month, inter alia, because he "wanted to be a better father than that" and so Mother could "take care" of the children. The evidence is nevertheless uncontroverted that Father paid the $450.00 per month for child support for approximately eight years—having never raised the issue of overpayment to Mother until the morning of the September 1999 hearing—but that, considering Father's overstatement of the medical insurance premium, Father also effectively underpaid child support from the beginning.

■ ¶ 11 As to Mother's prayer for recovery of the overstated insurance premiums, we agree with the trial court that Mother's plea amounts to an impermissible collateral attack on the original decree. However, the record of proceedings suggests to us the trial court felt bound to allow, and without the discretion to deny, Father's claim for overpayment of child support.

¶ 12 In this respect, we have previously cited Oklahoma and other authority establishing the issue of credit for overpayment of child support as a matter addressed to the discretion of the trial court. *Harris*, 1974 OK CIV APP 32, ¶ 13, 530 P.2d at 149–150. Under the specific facts and circumstances of this unusual case, considering (1) Father's long-term overpayment of child support, whether voluntary or mistaken, (2) Father's unjust enrichment attributable to the overstated medical insurance premium, and (3) Father's failure to raise the issue of child support overpayment for almost nine years—

and only after Mother's motion to modify had been granted based on Father's substantial increase in income—we hold the trial court abused its discretion in granting Father judgment for the alleged over-payment of child support.

¶ 13 The order of the trial court is therefore REVERSED. The competing motions of Father and Mother for an award of appeal-related attorney's fees are DENIED.

ADAMS, P.J., and JONES, J., concur.