ADRIENNE E. PETERSEN, PLAINTIFF–RESPONDENT, v.
RUSSELL PETERSEN, DEFENDANT–APPELLANT.

Argued January 13, 1981—Decided April 21, 1981.

*Gerald Goldman* argued the cause for appellant (*Goldman, Carlet, Garrison, Bertoni & Bitterman,* attorneys).

*Arnold Koenig* argued the cause for respondent.

The opinion of the Court was delivered by

HANDLER, J.

We are called upon to consider the validity of an agreement settling the terms and conditions for alimony and support incorporated in a 1966 judgment of divorce. The agreement provides for the automatic escalation or adjustment of such payments in fixed amounts correlated to specific changes in the incomes of the respective spouses. It is the contention of the defendant husband that, insofar as the arrangement requires the automatic escalation of alimony and support payments based upon increases in his net income, this kind of agreement is totally null and void as contrary to public policy and current laws governing the termination of marriages.

I

Russell and Adrienne Petersen were married in New Jersey in 1946. In 1966 divorce proceedings took place in both New Jersey, where the husband resided, and New York, where the marital home was located and the wife resided. The parties voluntarily entered into a stipulation of settlement on June 10, 1966 on the record in open court before the Supreme Court of New York, Richmond County. The divorce proceedings then shifted to New Jersey, where a judgment *nisi* granting divorce

was entered on July 19, 1966 pursuant to the stipulation of settlement.

The judgment incorporates the agreement of the parties. Custody of the children is given to the wife and visitation rights to the husband. The husband is required to pay the mortgage, taxes, insurance, water and sewer rents and repair bills on the marital home. For support the husband must pay $100 weekly, allocating $70 for alimony and $15 for each of two children until they reach majority or become self-supporting. In addition the husband is obliged to pay ⅓ of his net income that exceeds $12,650 per annum. The agreement further provides that the weekly payments for alimony and support are to be reduced by ⅓ of the weekly sum earned or received as income by the wife.[1]

In 1976, in addition to providing for the marital home, the husband paid $110 per week for support as a result of the escalation feature of the agreement. In June 1976 the plaintiff brought a motion seeking an order declaring that the retained earnings of her husband's company (allegedly some $380,000 in 1973) are income to her husband for purposes of invoking the escalation clause of the alimony agreement. Defendant by cross-motion requested that the escalation clause be declared null and void.

The Chancery Division granted the cross-motion, holding that such an escalation clause is contrary to the public policy of this State. The Appellate Division reversed and remanded, ruling that there is no *per se* bar to the use of such an agreement. The court further ruled that the defendant was still entitled to demonstrate that the alimony escalator was unfair and not enforceable according to its terms because of circumstances that had changed since the inception of the divorce agreement. 172 *N.J.Super.* 304 at 308.

---

[1]The stipulation of settlement exempted $30 of the wife's income from this provision, but this was eliminated by the trial judge.

## II

We have recognized and emphasized repeatedly that matrimonial agreements between spouses relating to alimony and support, which are fair and just, fall within the category of contracts enforceable in equity. *Carlsen v. Carlsen*, 72 *N.J.* 363, 370–371 (1977); *Berkowitz v. Berkowitz*, 55 *N.J.* 564, 569 (1970); *Schlemm v. Schlemm*, 31 *N.J.* 557, 581–582 (1960). Such agreements are essentially consensual and voluntary in character and therefore entitled to considerable weight with respect to their validity and enforceability notwithstanding the fact that such an agreement has been incorporated in a judgment of divorce. *Carlsen v. Carlsen, supra,* 72 *N.J.* at 371.

The narrow issue before the Court is the applicability of this general doctrine or approach to an escalation clause relating to alimony and child support that is part of a matrimonial agreement incorporated in a judgment of divorce. Recently, this Court, through Justice Pashman in *Lepis v. Lepis,* 83 *N.J.* 139, 153–154 (1980), stressed the desirability and wisdom of supporting voluntary contractual arrangements designed to deal with future contingencies in matrimonial causes, *viz :*

> As a practical matter, spousal agreements have great potential for ensuring the desired degree of stability in support arrangements. Such agreements traditionally have been more comprehensive and particularized than court orders, and thus more carefully tailored to the peculiar circumstances of the parties' lives. In view of the current economic conditions and the changing social structure of the family—particularly with regard to women's roles—courts, too, should make greater efforts to provide in advance for change. This would enhance the stability of judicially fashioned arrangements and make unnecessary a return to court. (citations omitted).

See also *Berkowitz v. Berkowitz, supra,* 55 *N.J.* at 569–570 (agreement will not be modified because "[a]ll of the alleged 'changed circumstances' were envisioned by the parties and dealt with specifically in the Agreement.")

Accordingly, we approach the spousal agreement in this case with a predisposition in favor of its validity and enforceability. There is no sound reason for considering an escalation clause to be invalid *per se.* We share the view of the Appellate Division in this case that such a clause may well be an appropriate means

for resolving a continuing need for alimony and child support. 172 *N.J.Super.* at 307.[2]

An escalation provision that automatically ties increases in support to the net income of the obligated spouse can comport with established principles relating to matrimonial support. As recognized by the Appellate Division here, such escalation clauses are geared to one of the factors which ordinarily justifies modification of alimony or child support payments, namely, change in the net income of the obligated spouse. To the extent that ability to pay is a relevant factor, increases in the net income of the party responsible for alimony and support may be evidential of an enhanced ability to pay. Moreover, while other factors such as the financial status—the income and the needs—of the dependent spouse must also be considered by a court, a clause dealing with the obligor's earnings is material and relevant in the balancing that goes into the resolution of the support issue. The same common experience that generates a presumption that ability to pay will be enhanced with an increase in earnings makes it reasonable in an inflationary economy to assume that the cost of living and concomitant needs of dependents will rise similarly. Hence agreements dealing with matrimonial support obligations that resort to escalation formulas tied solely to the net income of the obligated spouse are not conclusively or presumptively invalid as a matter of law.

In this case, the agreement contains references to comparative spousal financial ability and need. The alimony and child support clause contemplates not only increases geared to the income of the defendant-husband but also decreases or reductions in

---

[2]As correctly perceived by the Appellate Division, 172 *N.J.Super.* at 306–307, *DiTolvo v. DiTolvo*, 131 *N.J.Super.* 72 (App.Div.1974) is contrary to the conclusion reached in our decision and is, in this regard, hereby superseded. To the extent that such cases as *Stout v. Stout*, 155 *N.J.Super.* 196, 205 (App.Div.1977) and *Arnold v. Arnold*, 167 *N.J.Super.* 478, 480 (App.Div.1979) follow *DiTolvo* and reach a different resolution of this question from that reflected herein, they cannot survive our decision today.

such payments to the extent that the plaintiff-wife herself earns income in the future. *Ante* at 640–641. This added contractual dimension adds force to the conclusion that this contract is clearly valid, as well as susceptible of application and enforcement in accordance with prevailing standards under our current matrimonial laws.

### III

The enforceability of such a contract implicates much broader concerns than those involved in assessing only its *per se* invalidity. Even though such clauses are not invalid *per se*, it does not follow that they are automatically to be enforced according to their specific terms. Enforcement of such agreements remains a judicial responsibility and is subject to judicial supervision. *Lepis v. Lepis, supra*, 83 *N.J.* at 148–149. Of course judicial scrutiny is to be undertaken in the context of our current matrimonial laws which reflect contemporaneous and modern perceptions of alimony and support obligations. See *N.J.S.A.* 2A:34–23; *Lepis v. Lepis, supra*, 83 *N.J.* at 150–156. See generally *Kazin v. Kazin*, 81 *N.J.* 85, 92–94 (1979). Thus, a party adversely affected by such an agreement may still seek to have the alimony escalator modified or, indeed, set aside because of changed circumstances. The guidelines for the proper resolution of this kind of conflict are well-settled. *Lepis v. Lepis, supra*, 83 *N.J.* at 150–156; *Carlsen v. Carlsen, supra*, 72 *N.J.* at 369–371; *Smith v. Smith*, 72 *N.J.* 350, 360–363 (1977). However, it should be the burden of the party challenging the validity and enforceability of such an agreement to show that its terms, in light of changed circumstances, are unfair and unjust. For example, in this case, regardless of the contractual terms, it would be unfair to require the husband to pay ⅓ of his income when he cannot afford to do so and where the wife is no longer in need. In the final analysis the contractual provisions for alimony and support, including those calling for escalated increases, can be enforced only if they satisfy these equitable criteria. *Id.* at 359–360; *Carlsen v. Carlsen, supra,* 72 *N.J.* at

370–371. This is ultimately a matter demanding judicial assessment and determination.

This is not to gainsay or deprecate the significant role that contractual agreements should play in the judicial resolution of matrimonial disputes. It would be shortsighted and unwise for courts to reject out of hand consensual solutions to vexatious personal matrimonial problems that have been advanced by the parties themselves. Voluntary accommodations regarding matrimonial differences are highly desirable and make a major contribution to the fulfillment of "the strong public policy favoring stability of arrangements." *Smith v. Smith, supra,* 72 *N.J.* at 360, quoted in *Lepis v. Lepis, supra,* 83 *N.J.* at 147–148. Hence the alimony and support contract escalation clauses, no less than other contractual provisions relating to alimony and support, are entitled to "due weight." *Id.*

We add that the weight which will be due such agreements will grow in direct proportion to the degree that these understandings have been genuinely tailored to all of the relevant matrimonial concerns of the parties. A claim for their enforcement becomes more compelling as agreements themselves incrementally include elements that a court would deem material in determining whether their enforcement is just, fair, and equitable. See *Lepis v. Lepis, supra,* 83 *N.J.* at 153–154. The equitable considerations that bear upon the enforceability of alimony and support agreements generally include not only the ability to pay and the respective incomes of the spouses but the needs of each spouse as well. As applied to an alimony and support agreement encompassing an escalation formula, these concerns can be addressed by carefully identifying the nature and sources of income, fixing the formula for measuring changes in earnings, specifying proofs or evidence of income, delineating elements of need and accounting for changes in the cost of living and basic expenses. See *Lepis v. Lepis, supra,* 83 *N.J.* at 155 (a supported spouse should be encouraged to contribute to his or her own maintenance); *Raymond v. Raymond,* 39

*N.J.Super.* 24 (Ch.Div.1956). Thus to the extent that the parties have developed comprehensive and particularized agreements responsive to their peculiar circumstances, such arrangements will be entitled to judicial deference and greatly assist the judiciary in the discharge of its supervisory role in such matters.

■ In this case, the Appellate Division properly held that the escalation clause was not invalid *per se.* It ruled, nevertheless, that the clause was not enforceable according to its terms in the absence of an inquiry and determination by the trial court as to whether under changed circumstances the enforcement of those terms would be fair, just and equitable. Consequently, it remanded the case for such a determination. This disposition, in our estimation, is entirely sound. We do not and need not intimate any view on the propriety of including the retained earnings of the defendant's business under the facts of this case as part of income under the escalation clause.

For the foregoing reasons, the judgment below is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.