**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3885-14T1

J.E.,

    Plaintiff-Respondent,

v.

J.E.,

    Defendant-Appellant.

_____

        Argued November 15, 2016 — Decided May 4, 2017

        Before Judges Espinosa and Suter.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Bergen County,
        Docket No. FM-02-869-07.

        John R. Nachlinger argued the cause for
        appellant (Previte & Nachlinger, P.C.,
        attorneys; Mr. Nachlinger, on the briefs).

        Benjamin P. De Sena argued the cause for
        respondent (De Sena & Petro, attorneys; Mr.
        De Sena, on the brief).

PER CURIAM

Defendant J.E. (Jesse)[1] appeals a February 25, 2015 order of the Family Division that denied his request to transfer his child to the Upper Saddle River (USR) school system, and an April 6, 2015 order that required him to pay part of the attorney's fees incurred by plaintiff J.E. (Joy) in opposing the requested transfer. We affirm the order denying the transfer, but reverse the order for attorney's fees and remand that issue to the Family Part.

Jesse and Joy were married in 1998, and had one child, Randy, who was born in 2002. They divorced on May 29, 2007, after executing a comprehensive property settlement agreement (PSA). Under the PSA, the parties agreed to joint legal and physical custody of Randy with parenting time that was equally divided. Neither parent was designated the parent of primary residence.

Regarding Randy's education, Article VI, paragraph 7, of the PSA provided that:

> The parties shall confer and agree upon the school system into which the child shall be enrolled, either Bogota or Ridgefield Park, based upon the choices afforded by the parties' respective residences. The agreement shall be based upon the better school system for the child, and the child's best interests. Should either party choose to move from either of those towns, the child's "residence" for purposes of determining the child's school

---

[1] We have used initials and fictitious names to protect the privacy of the child who is involved in this matter.

A-3885-14T1

> system shall be reevaluated and subject to
> further conference and agreement between the
> parties.  Should the parties fail to agree,
> the matter shall be referred to mediation.  If
> mediation is unsuccessful, the matter shall
> be referred to the court upon the application
> of either party.

After the parties divorced, Randy attended elementary school in the Ridgefield Park school system.  In the early grades, Randy did well, but by sixth grade there was a noticeable decline in his grades, particularly in the areas of science and civics.  In the past, Randy had achieved higher grades in math and science than in the language arts, but in sixth grade, even his grade in science had dropped.

Jesse remarried and in December 2013 moved to USR because of the school system, which he believed to be superior to the schools in Ridgefield Park.  When the parties could not agree on whether Randy should attend Cavallini Middle School (Cavallini) in USR or continue attending school in Ridgefield Park, and after mediation failed to resolve the dispute, Jesse filed a post-judgment motion in July 2014 seeking an order requiring Randy's transfer to the USR school system.[2]  At that time, Randy was in seventh grade at the Ridgefield Park Jr./Sr. High School (Ridgefield Park).

---

[2] The motion also requested reimbursement of certain expenses, but because those issues are not part of the appeal, we have omitted them from our opinion.

A plenary hearing was conducted. Dr. Eileen Kohutis, a psychologist retained by Jesse, testified that moving Randy to Cavallini would "increase his motivation," as "[t]he school work would challenge him more." Dr. Kohutis testified about a number of stresses in Randy's life, and that he had an "emotional attachment" to Ridgefield Park. She observed that Randy was shy, but opined he would be able to maintain the friends he had developed at Ridgefield Park, despite the distance between the two towns.

Jesse testified that Randy was not being challenged at Ridgefield Park, and that Randy needed to "work up to his potential," as he was not making enough of an effort. He denied Randy had trouble making friends or difficulty with change. Jesse wanted to move Randy to another school to motivate him.

Joy testified that Randy was being challenged at Ridgefield Park, where he was "extremely happy." She saw no compelling reason to transfer Randy to another school.

Dr. Jonathan Mack, a psychologist retained by Joy, testified that Randy's best interest was to continue school attendance at Ridgefield Park. He performed a number of psychological tests on the child and his parents. His conclusion was that Randy was "a sensitive child, easily pressured." Randy "[did] not respond well to pressure, [did] not respond well to a lot of push to be

competitive." He did not "handle[] conflict well" and "internalizes it." Dr. Mack testified that if "you put this kid under too much competitive pressure, you're going to have a meltdown." Dr. Mack reported the child had somatic complaints such as "nightmares, dizziness, tired, aches, headaches, eye problems, skin problems and stomach problems." If transferred to "a more difficult, demanding, competitive school district," Randy may show "worsening performance under pressure, increased psychosomatic reactivity, increased sleep disruption, and increased tendency to be overweight due to eating over stress."

Jesse's application to transfer Randy's school enrollment to Cavallini was denied. In its written opinion, the Family Part judge found Jesse's expert witness, Dr. Kohutis, "did not supply much useful information based on her area of expertise." The court noted Dr. Kohutis's conclusion that a transfer to Cavallini was in Randy's best interest failed to address whether there would be "a psychological impact" on Randy if he were transferred to Cavallini and then did not do well academically. Dr. Kohutis also failed to consider the impact on Randy's self-esteem if he changed schools and performed poorly.

The court found that both schools would "provide extracurricular and educational activities which will meet the needs of the child." Both would be "welcoming" and both would

"afford [Randy] an opportunity to unfold his talents both academically and musically," although Ridgefield Park offered more "cultural diversity." The court found that the "continuity of school, teachers, friends and acquaintances" provided "compensation for the fractionalization of [the child's] time[,]" referencing the parents "50/50" shared parenting time arrangement. The court found that "[p]eer relationships are very important," as well as "the continuity of friends and the emotional attachment to school and the community," in "stimulating the overall growth of the child." The court concluded that it was in Randy's "best interest to remain as a student in Ridgefield Park."

Both parties requested payment of their attorney and expert fees. The court clarified at trial that it would address their fee requests at a later date. In her written summation, Joy's counsel "await[ed] advice from the court" about her request for fees because the court had indicated during the hearing that "evidence pertaining to such would not be admitted into evidence at this time." Jesse's written summation asked for fees because he contended Joy acted in bad faith by not settling the case. He objected to any payment of her attorney's fees because Joy's mother had paid them, not Joy. He noted, as he had at trial, that his counsel and expert fees were paid for largely by credit cards.

By letter on March 30, 2015, Joy's counsel submitted a certification from Joy addressing attorney fees. In the submission, she explained the disparity of the parties' income, that Jesse had proceeded in bad faith, and submitted copies of fee certifications from her counsel, which were not in evidence at the trial. She attached a copy of Jesse's deed and mortgage for his new home in USR, which also were not in evidence.

On April 6, 2015, in an oral decision, the trial court ordered Jesse to pay $34,512 in attorney's fees to Joy, which was a portion of the amount she claimed in her March 30, 2015 submission. The court reviewed Rule 5:3-5(c), finding that Joy had less ability than Jesse to pay fees because of her income, that she had borrowed money from her mother to pay for them, and that she was the prevailing party. Jesse did not show good faith because he had tried to dissuade Joy's mother from continuing to fund the litigation. The court stated it had no information from Jesse about his expert or attorney's fees.

Two days later, Jesse's counsel advised the court by letter that he had been preparing a response to the March 30, 2015 letter, which would have apprised the court of the new information that Jesse "lost his job in January, exhausted his savings, maxed out his credit cards, and had no ability to pay counsel fees. Moreover, his wife recently gave birth to twins and is not

working." He requested the opportunity to respond. Counsel for Joy opposed this request, but the issue was not further addressed by the court.

Jesse appeals, claiming the Family Part judge erred in determining Randy should continue attendance at Ridgefield Park. He asserts the court should have assessed the quality of the two school systems and selected whichever one was better. He contends the court erred by raising the concept of fractionalization at trial and then relying on that concept in its decision. Further, Jesse challenged the award of attorney's fees, claiming the court violated due process and misapplied its discretion because he did not have the opportunity to oppose Joy's request for fees. If there is a remand, he requests assignment to a different judge because of alleged bias by this judge.

## I.

"[W]e accord great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition "of the family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special

deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In cases where the child's joint custodians cannot agree on the choice of school, the issue is resolved by ascertaining the best interest of the child. In Levine v. Levine, 322 N.J. Super. 558, 565 (App. Div. 1999), certif. denied, 163 N.J. 75 (2000), the parents shared physical and legal custody of their child but could not agree where the child would attend school. After a plenary hearing, the court ordered a transfer. There, "[w]e question[ed] the wisdom of a Family Part judge engaging in a comparative evaluation of public school districts based on" empirical data. Id. at 567.

> In the context of the best interests of a child, any evaluation of a school district is inherently subjective. Just as a student cannot be summed up by IQ, verbal skills or mathematical aptitude, a school is more than its teacher-student ratio or State ranking. The age of its buildings, the number of computers or books in its library and the size of its gymnasium are not determinative of the best interest of an individual child during his or her school years. Equally, if not more important, are peer relationships, the continuity of friends and an emotional attachment to school and community that will hopefully stimulate intelligence and growth to expand opportunity.
>
> [Ibid.]

A-3885-14T1

We are satisfied the conclusion of the Family Part judge here, that transfer was not in the child's best interest, was consistent with our guidance in <u>Levine</u> and supported by "adequate, substantial and credible evidence" in the record. <u>See</u> <u>Rova Farms Resort, Inc. v. Investors Ins. Co.</u>, 65 <u>N.J.</u> 474, 484 (1974).

The parties' PSA did not require the Family Part judge to determine which school system offered a better education. Although marital settlement agreements "which are fair and just" are enforceable in equity, <u>see</u> <u>Petersen v. Petersen</u>, 85 <u>N.J.</u> 638, 642 (1981), the parties' PSA expressly required consideration of Randy's best interest. The court followed our guidance in <u>Levine</u> that cases such as this are about more than the schools themselves, and that the best interest of the child is the paramount concern.

The Family Part judge had ample evidence to support the finding that Randy's best interest was not served by a transfer. Dr. Mack testified that Randy had self-esteem issues, did not make friends easily, was weak in listening skills and did not respond well to pressure, competition or conflict. Dr. Mack testified that Randy could "meltdown" if subjected to too much competitive pressure, and that his transfer to USR would be "counterproductive" and will "set him backwards." The child told Dr. Mack that he was suffering from somatic complaints such as dizziness, lack of sleep

and headaches. Dr. Mack testified increased competition would exacerbate these symptoms.

The trial court did not err in discounting the testimony of Jesse's expert because Dr. Kohutis had not addressed many of these concerns. She had not conducted psychological testing. She had not considered what might happen to Randy's self-esteem, nor any other consequences for Randy should there be an academic decline at Cavallini. Indeed, her opinion that transfer was warranted was based on her conclusion from Randy's grades that Ridgefield Park was not motivating Randy.

Jesse claims error because during the trial, the court asked Dr. Mack about "fractionalization," which was its reference to the parties' equal parenting time. The trial judge is permitted to, "on his own initiative and within his sound discretion, interrogate witnesses for the purpose of eliciting facts material to the trial." State v. Riley, 28 N.J. 188, 200 (1958), cert. denied and appeal dismissed, 359 U.S. 313, 79 S. Ct. 891, 3 L. Ed. 2d 832 (1959); see also State v. Guido, 40 N.J. 191, 207-08 (1963). We see no error by the trial judge in making this inquiry, particularly given the testimony by both experts about Randy's level of stress.

We disagree with Jesse's contention the Family Part judge was biased. The record of the trial showed no bias whatsoever. Bias

is not manifested merely because the court decides against the position of one of the parties. See Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008) ("Bias cannot be inferred from adverse rulings against a party.")

## II.

Jesse appeals the trial court's April 6, 2015 order that required him to pay $34,512 toward Joy's attorney's fees. The assessment of attorney's fees is an issue left to the sound discretion of the trial court. Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010), aff'd, 208 N.J. 409 (2011). It is reviewed under an abuse of discretion standard. Strahan, supra, 402 N.J. at 317 (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Although the court appropriately considered the factors under Rule 5:3-5(c), it appears that Jesse did not have the opportunity to respond to the March 30, 2015 submission by Joy before the court's decision was made. He advised the court he had new information about his ability to pay and wanted the opportunity to respond to new documents that were not part of the evidence at trial.[3] Because of that, we are constrained to reverse the

---

[3] The March 30, 2015 submission by Joy included the deed and mortgage of Jesse's home in USR, as well as certifications of services from her counsel.

attorney fee award. On remand, Jesse should be afforded an opportunity to respond to the March 30, 2015 submission. The court also may permit the parties to update their case information statements. If there is an award, the court should explain how it reached that amount.

We affirm the February 25, 2015 order that denied Jesse's request to transfer the child's school to USR. We reverse the April 6, 2015 order that awarded attorney's fees and remand that issue to the Family Part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION