**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4566-19

MARLEENA OLSSON
(f/k/a MARLEENA
ROMEO),

     Plaintiff-Respondent,

v.

JOHN ROMEO,

     Defendant-Appellant.

_____

Submitted September 13, 2021 – Decided  September 24, 2021

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-0674-18.

Berg & Pearson, PC, attorneys for appellant (Michael H. Berg, on the briefs).

Patricia Ronayne, PC, attorneys for respondent (Jaclyn Kusmaul, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant John Romeo appeals from an August 21, 2020 Family Part order denying his motion to terminate alimony; reducing his alimony obligation from $1200 per week to $150 per week; and denying his request to suspend payments pending a decision on his Social Security Disability (SSD) application. Defendant also appeals the judge's decision granting plaintiff Marleena Olsson's cross-motion designating her as the beneficiary of defendant's retirement accounts up to the amount of $380,000 in order to secure his alimony obligation. We affirm.

I.

The following facts are derived from the record. The parties married in November 1997, divorced in November 2018, and have two emancipated children. In their property settlement agreement (PSA) incorporated into the dual final judgment of divorce (FJOD) on November 15, 2018, defendant agreed to pay open durational alimony of $1200 per week to plaintiff after the former marital home was sold. The PSA provided that defendant was self-employed, operating RomeoPhoto, LTD (RomeoPhoto),[1] with a stipulated gross annual income of $200,000. RomeoPhoto was established in 1989 and specialized in

---

[1] RomeoPhoto is referred to as RomeoPhoto, LTD and Romeo Photography, LTD interchangeably throughout the record. We refer to the business as RomeoPhoto.

A-4566-19

commercial photography. For purposes of calculating alimony, plaintiff was imputed a gross annual income of $25,000. Defendant agreed to maintain his life insurance policy with a death benefit of $120,000 naming plaintiff as the beneficiary and designating her as the beneficiary for the full value of his retirement accounts to secure his alimony obligation since the life insurance coverage was insufficient to cover the total alimony obligation. At the time the FJOD was entered, defendant was fifty-four years old, and plaintiff was fifty-one years old. Article I, Section J, paragraph twelve of the PSA provides in pertinent part: "[Defendant's] alimony obligation shall . . . be subject to review based upon a substantial change of circumstances."

Following the parties' divorce, defendant was diagnosed with various medical conditions. On February 12, 2020, defendant applied for SSD benefits and was found eligible to receive benefits beginning in June 2020. Since March 26, 2020, defendant has been on continuous oxygen therapy and asserted he can no longer work "due to his physical limitations." On July 16, 2020, defendant filed a post-judgment motion seeking to terminate his alimony obligation or alternatively, a temporary suspension of his alimony payments and obligations to secure alimony under the PSA, and for counsel fees.

Defendant argued that his alimony obligation should be terminated or suspended retroactive to December 6, 2019, the date he was deemed disabled and therefore eligible for long-term disability benefits by his private insurer, Northwestern Mutual. He also claimed his last RomeoPhoto project ended in early December 2019. The business was dissolved, and defendant certified he was being evicted from his residence and his studio.

On August 3, 2020, plaintiff filed opposition to defendant's motion and a cross-motion for enforcement of his obligation to pay $1200 per week in alimony or alternatively, for a modification of the alimony amount if the judge found a sufficient basis to suspend payments. In her certification in opposition to defendant's motion and in support of her cross-motion, plaintiff asserted that his application was "premature" because he did not present any evidence confirming his ailment is "permanent."

Plaintiff also contended defendant "has not established that he is completely unable to work in any capacity" and defendant can earn $14,640 annually without jeopardizing his disability benefits. According to plaintiff, the alimony arrearages were $21,600, and she certified that defendant transferred $68,613.99 to his girlfriend in Italy. In addition, plaintiff cross-moved to be designated as the beneficiary of defendant's retirement account, up to the sum

A-4566-19

of $380,000, in order to secure the alimony obligation. Plaintiff did not seek discovery and neither party requested a plenary hearing.

The judge heard oral argument on August 21, 2020, and issued his order and written statement of decision later that day. In his detailed order and decision, the judge found "a complete termination of [d]efendant's alimony obligation is [not] appropriate given the parties' agreement providing for open durational alimony." The judge determined that defendant established a substantial change of circumstances because as of June 2020, he began receiving SSD benefits of $3,030.80 per month and long-term disability payments of $4775 per month or $4,409.71 (after the social security automatic withdrawal) from Northwestern Mutual effective December 6, 2019.[2] Applying offsets, the judge concluded defendant's income is now $57,300 per year, and that in 2019, plaintiff earned $31,646.

Based on the record presented, the judge emphasized that defendant's business is "now permanently closed"; he has no other current sources of income; neither party can maintain the marital lifestyle; and defendant's alimony obligation should be modified, not terminated. The judge addressed the

---

[2] Defendant's long-term disability payments from Northwestern Mutual were reduced by his SSD payments.

modification of alimony issue by self-employed persons governed by N.J.S.A. 2A:34-23(l), which states:

> When a self-employed party seeks modification of alimony because of an involuntary reduction in income since the date of the order from which modification is sought, then that party's application for relief must include an analysis that sets forth the economic and non-economic benefits the party receives from the business, and which compares these economic and non-economic benefits to those that were in existence at the time of the entry of the order.

The judge explained that both parties "[are] not able to maintain a standard of living reasonably comparable to the standard enjoyed during the marriage," citing Crews v. Crews, 164 N.J. 11, 28 (2000). Based upon the parties' matrimonial case information statements (CIS), the judge found defendant reported monthly expenses of $10,408 and plaintiff's CIS reported monthly expenses of $6035. In light of these circumstances, the judge reduced defendant's alimony obligation from $1200 per week to $150 per week retroactive to the filing date of his motion, without prejudice to plaintiff's right to file a motion to modify the revised alimony award in the event defendant's "health improves in the future." The judge granted defendant's request to terminate his life insurance obligation to secure alimony payments.

A-4566-19

With regard to plaintiff's cross-motion, the judge granted her application to require defendant to designate her as the beneficiary of his retirement amounts up to $380,000 in order to secure his alimony obligation. In considering both parties' requests for counsel fees, the judge considered the factors under N.J.S.A. 2A:34-23, Rules 4:42-9(a)(1) and 5:3-5(c), and RPC 1.5(a). He concluded "the [c]ourt has not been presented with sufficient evidence to establish that either party acted in bad faith" and found no counsel fees should be awarded. A memorializing order was entered.

On appeal, defendant challenges the judge's order denying his application to terminate alimony and directing that he secure the alimony obligation with his retirement account monies.

## II.

Our scope of review of Family Part orders is limited, as we accord deference to the family courts due to their "special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Therefore, the judge's findings are binding so long as its determinations are "supported by adequate, substantial, credible evidence." Id. at 411-12. A "[motion] judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Spangenberg v. Kolakowski, 442 N.J. Super.

529, 535 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

An agreement and order to pay permanent or open durational alimony are "subject to review or modification by our courts based upon a showing of changed circumstances." Glass v. Glass, 366 N.J. Super. 357, 370 (App. Div. 2004) (quoting Miller v. Miller, 160 N.J. 408, 419 (1999)); see also N.J.S.A. 2A:34-23 (providing support orders "may be revised and altered by the court from time to time as circumstances may require"). "The party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief from the support or maintenance provisions involved." Lepis v. Lepis, 83 N.J. 139, 157 (1980) (citation omitted). Only after the party seeking modification has satisfied its burden will the court consider the second prong under Lepis, whether "changed circumstances have substantially impaired the ability to support himself or herself." Crews, 164 N.J. at 28 (citing Lepis, 83 N.J. at 157).

A permanent involuntary decrease in a supporting spouse's income typically constitutes a "changed circumstance" permitting a modification or termination of alimony. Innes v. Innes, 117 N.J. 496, 504 (1990); see also Petersen v. Petersen, 85 N.J. 638, 643 (1981) (holding a change in an obligor's

income typically warrants modification of alimony). The court must determine "whether the change in circumstance is continuing and whether the agreement or decree has made explicit provision for the change." Lepis, 83 N.J. at 152. "Temporary circumstances are an insufficient basis for modification" or termination of an alimony obligation. Innes, 117 N.J. at 504 (citing Bonanno v. Bonanno, 4 N.J. 268, 275 (1950)).

Defendant first argues that the judge abused his discretion by finding the submissions supporting his motion did not establish a permanent change of circumstances necessary to terminate his open durational alimony obligation. According to defendant, he presented "substantial evidence" of his inability to work, as evidenced by being eligible for SSD and private long-term disability benefits. He claims Dr. Kathleen M. Biblowitz of the Jefferson Pulmonary Institute opined that his CT scan "shows irreversible damage" to his lungs and his use of supplemental oxygen prohibits him from performing "gainful work activities." Defendant has been receiving treatment for his condition since 2019 and he contends he "lives with a constant fear of dying" in light of the coronavirus.

We find no abuse of discretion in the judge's denial of defendant's motion to terminate alimony. Defendant does not dispute it was his burden to present

competent evidence of a permanent change in circumstances establishing a prima facie entitlement to termination of his alimony obligation. See, e.g., Palombi v. Palombi, 414 N.J. Super. 274, 291 (App. Div. 2010). He argues plaintiff's counsel acknowledged on the record that defendant "satisfied the change of circumstances prong" under Lepis, but he contends that under the second prong of the analysis, the judge erred by determining defendant had the ability to pay the reduced amount of $150 per week. See generally Lepis, 83 N.J. at 157-59.

The judge's careful scrutiny and well-reasoned analysis of the reports, certifications, CIS's, and documents submitted with the motion and cross-motion support his conclusion that defendant has the ability to pay $150 per week in alimony under N.J.S.A. 2A:34-23(l), given the disparities in the parties' current income levels. The judge highlighted that "[b]oth parties are experiencing a monthly shortfall based on their current [] monthly expenses." Based upon the substantial credible evidence in the record, the judge was correct in his analysis. Defendant did not sustain his burden under Lepis to terminate his alimony obligation under either prong.

We next reject defendant's contention that the judge erred by requiring defendant to continue to designate plaintiff as his beneficiary for the full amount

10

of his retirement accounts up to $380,000. In Article I, Section H, paragraph ten of the PSA, the parties agreed to secure defendant's alimony obligation with his retirement accounts because there was an insufficient amount of life insurance in place. A Family Part judge can order an obligor spouse to maintain life insurance, or other assets, for the protection of a former spouse. Jacobitti v. Jacobitti, 135 N.J. 571, 580 (1994); Davis v. Davis, 184 N.J. Super. 430, 439 (App. Div. 1982). "The requirement that defendant obtain life insurance on his life or create a trust fund to guarantee future alimony payments is appropriate and plainly within the broad authority conferred upon a judge in a matrimonial action . . . ."

The post-judgment order is consistent with the JOD, and defendant provides no evidence of error. Moreover, we cannot overlook the fact that defendant prevailed on his motion to terminate his life insurance obligation to plaintiff. We find no abuse of discretion in these rulings and affirm.

### III.

We review a trial court's order concerning attorneys' fees under an abuse of discretion standard. Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). N.J.S.A. 2A:34-23 authorizes family courts to award counsel fees in a matrimonial action and

"further requires the judge consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." Mani v. Mani, 183 N.J. 80, 94 (2005) (quoting N.J.S.A. 2A:34-23). Rule 5:3-5(c) states that a court should consider nine factors, including the "reasonableness and good faith of the positions advanced by the parties."

The judge here referenced the factors enumerated in the court rules and found that those factors did not support an award of counsel fees. He also concluded that neither party acted in bad faith. We discern no abuse of discretion in the judge's determinations. Both parties asserted various claims in these post-judgment proceedings, with varying degrees of success. The record does not reflect that either party pursued any claims in bad faith.

To the extent defendant's brief raises any additional arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-4566-19