**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3124-22

IECHESKEL ABRAMSKY,

    Plaintiff-Appellant,

v.

RUTH ABRAMSKY,

    Defendant-Respondent.

_____

> Submitted June 5, 2024 – Decided August 26, 2024
>
> Before Judges Vernoia and Gummer.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0222-20.
>
> Tonneman & Connors, LLC, attorneys for appellant (Cheryl E. Connors, of counsel and on the briefs).
>
> Lederberger Law, attorneys for respondent (Leah Lederberger, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Iecheskel Abramsky appeals from an order denying his motion for a plenary hearing regarding his request to modify custody and parenting time. A Family Part judge denied the motion in part, declining to enforce a provision in the parties' Marital Settlement Agreement (MSA) in which the parties agreed to a one-time waiver of the obligation to establish a substantial change in circumstances to modify the custody or parenting-time schedule of their children. Given the clear language of the parties' agreement and the temporary nature of their initial custody arrangement, we reverse that provision of the order and otherwise affirm.

I.

Plaintiff and defendant Ruth Abramsky were married in 2007 and had three children who were born in 2007, 2009, and 2014, respectively. After obtaining a religious divorce from a rabbinical court in 2019, the parties were divorced by way of an April 5, 2022 dual judgment of divorce in which the parties incorporated their MSA of the same date.

In the MSA, the parties agreed to have joint legal custody of the children. In paragraph one of the MSA, the parties also agreed:

> Neither party shall be designated as the Parent of Primary Residence at this time as the parties have agreed to an equal timesharing parenting agreement for a period of six months following the execution of this

2

agreement, with the acknowledgement that as of recent the two oldest children are not exercising parenting time with the Father consistent with the schedule set forth herein, although they are working towards reunification.

In paragraph nine of the MSA, the parties agreed to retain a Parenting Coordinator, who would "assist the parties as it relates to parenting time issues and on other child related issues, and [would] make recommendations if the parties are unable to resolve disputes." The parties agreed to "be bound by the recommendations of the Parenting Coordinator unless either party files an application to the [c]ourt to object to the recommendation within 14 days of the recommendation."

Paragraph sixteen of the MSA was entitled "Six-Month Review" and provided:

> After a six-month period following the execution of this Agreement, the parties shall review the custody/parenting time schedule to determine a schedule that is in the best interests of the children at this time. The parties shall attend at least one session with the Parenting Coordinator to mediate an appropriate parenting schedule with the costs of same to be shared as set forth above. In the event that mediation is unsuccessful, or one party fails to cooperate in attending the mediation session, either party shall have a right to file an application with the [c]ourt to modify the Custody/Parenting time schedule set forth herein without the necessity of demonstrating a substantial change in circumstances. Each party

3

further reserves the right to obtain a best interests forensic custody evaluation at that time at his or her own cost.

In a September 6, 2022 letter, plaintiff's counsel asked the Parenting Coordinator to schedule "as soon as possible" the mediation session the parties were required to attend pursuant to paragraph sixteen of the MSA. The next day, defense counsel emailed the Parenting Coordinator, asking her to schedule the mediation sometime after the six-month period referenced in paragraph sixteen. In an email she sent that day, the Parenting Coordinator advised the parties she was "professionally prohibited from engaging with the parties both as a [parenting coordinator] and mediator" and told them it would be "more appropriate for the parties to meet with another professional" for the mediation. The parties subsequently attended a mediation session before a different mediator on November 29, 2022.

In a December 30, 2022 letter, plaintiff's attorney advised defense counsel that plaintiff had retained someone to perform a best-interests evaluation, citing paragraph sixteen of the MSA, and asked that defendant complete and execute the enclosed documents provided by him. Defendant apparently declined to participate in that evaluation.

On January 26, 2023, plaintiff moved to compel defendant "to cooperate with a best[-]interests evaluation by plaintiff's expert, . . . in accordance with Paragraph 16 of the [MSA]." In the motion, plaintiff also sought the scheduling of a plenary hearing, after the completion of the best-interests evaluation, for the court "to determine the following requests": (1) "[m]odifying custody and parenting time such that plaintiff will be designated the parent of primary residence and defendant will be designated the parent[] of alternate residence"; and (2) "[m]odifying the parenting time schedule such that the minor children . . . will reside with plaintiff primarily with a parenting time schedule for defendant of alternating weekends and one weeknight dinner each week." He also asked the court to order defendant to pay his counsel fees.

In support of the motion, plaintiff submitted his certification, in which he asserted paragraph sixteen of the MSA "makes clear that [the parties] agreed that no showing of changed circumstances was necessary to modify the custody and parenting time schedule," the purpose of that paragraph "was to avoid unnecessary motion practice," and the parties' "intent when signing the MSA was to attend mediation and then obtain best[-]interests evaluations if [they] were unable to agree."

A-3124-22

Defendant opposed the motion and cross-moved to "[r]ecogniz[e] and enforc[e]" the parties' "share[d] legal custody and equal timesharing" of the children set forth in paragraph one of the MSA and to modify paragraph thirty-five of the MSA to provide that both parties would "share in the ability to schedule and attend medical appointments of their children." She also asked the court to order plaintiff to pay her legal fees.

On May 5, 2023, the Family Part judge heard argument and issued an order denying plaintiff's motion, granting defendant's cross-motion, and denying both fee applications. In paragraph one of the order, the judge denied the aspect of plaintiff's motion seeking to compel defendant's cooperation with his expert's best-interests evaluation. The judge found that while the MSA gave the parties the right to obtain a custody evaluation at their own cost, nothing in the MSA compelled the parties to "cooperate [in] or facilitate such an evaluation."

In paragraph two of the order, the judge denied the aspect of plaintiff's motion seeking a plenary hearing regarding his requests to modify custody and parenting time without first demonstrating a substantial change in circumstances. The judge found the MSA did "not have any weight in overturning the caselaw which governs the [c]ourt in determining whether to entertain the parties' application." Noting the court was not a party to the MSA,

6

the judge explained on the record that "parties can negotiate their alimony, they can negotiate the parameters of their child support, they can negotiate many things," but they cannot "negotiate the standards by which a [c]ourt will act." He held "[a] judge must consider a request for modification in accordance with the procedural framework established by the New Jersey Supreme Court in . . . . Lepis v. Lepis, 83 N.J. 139, 157-59 (1980)," which requires the party seeking modification to make a prima facie showing of a change in circumstances. The judge concluded "there is no justification on the present record to find that a change in custody at this time is in the children's best interests."

Plaintiff appeals from paragraphs one and two of the order, arguing the judge erred in declining to be bound by the MSA provision permitting the parties to file a custody or parenting-time modification motion "without the necessity of demonstrating a substantial change in circumstances" and "erroneously denied plaintiff the right to his best[-]interests expert." Following the unambiguous language of the parties' MSA, we affirm paragraph one and reverse paragraph two of the order.

7

Our review of a Family Part judge's findings is limited. "[W]e 'review . . . [a] Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's special jurisdiction and expertise in family matters.'" S.B.B. v. L.B.B., 476 N.J. Super. 575, 594 (App. Div. 2023) (quoting Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016)), certif. denied, 256 N.J. 434 (2024). We review de novo questions of law, such as the interpretation and construction of a contract. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020); see also Steele v. Steele, 467 N.J. Super. 414, 440 (App. Div. 2021).

The settlement of family disputes is "encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). Settlement agreements in matrimonial matters, "being 'essentially consensual and voluntary in character[,] . . . [are] entitled to considerable weight with respect to their validity and enforceability' in equity, as long as they are fair and just." N.H. v. H.H., 418 N.J. Super. 262, 279 (App. Div. 2011) (alterations in the original) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). "[I]t is 'shortsighted and unwise for courts to reject out of hand consensual solutions to vexatious personal matrimonial problems that have been advanced by the parties themselves.'"

Quinn, 225 N.J. at 44 (quoting Petersen, 85 N.J. at 645). "Therefore, 'fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed.'" Id. at 44-45 (quoting Smith v. Smith, 72 N.J. 350, 358 (1977)).

A settlement agreement resolving a matrimonial dispute is a contract and "is governed by basic contract principles." Id. at 45. Guided by those principles a court "should discern and implement the intentions of the parties" and "should not rewrite a contract or grant a better deal than that for which the parties expressly bargained." Ibid. "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid.

"[S]ettlements – the parties' choice of the least unfavorable alternatives – occur for many reasons other than certainty of result. Settlements are made to obviate the pressures of litigation, to avoid the expense of counsel fees, and to avoid the cost and delay of appeals." N.H., 418 N.J. Super. at 280. In a clear attempt to "obviate the pressures of litigation" and "to avoid the expense of counsel fees," the parties chose a six-month review period instead of proceeding immediately to a trial to resolve their disputes concerning custody and parenting time. We know that from the unambiguous language of their MSA.

In paragraph one, the parties agreed "[n]either party shall be designated as the Parent of Primary Residence at this time as the parties have agreed to an equal timesharing parenting agreement for a period of six months following the execution of this agreement . . . ." As set forth in paragraph sixteen, they agreed that after the six-month period, they would "review the custody/parenting time schedule to determine a schedule that is in the best interests of the children at this time"; they would "attend at least one [mediation] session with the Parenting Coordinator"; and, if the mediation was unsuccessful, either party had "a right to file an application with the [c]ourt to modify the Custody/Parenting time schedule set forth herein without the necessity of demonstrating a substantial change in circumstances." We see nothing unfair or unjust about those agreed-upon procedures nor any reason to think they would lead to an absurd result.

Focusing on the last sentence of paragraph sixteen – "Each party further reserves the right to obtain a best interests forensic custody evaluation at that time at his or her own cost" – in isolation, defendant contends the phrase "at that time" is somehow ambiguous and would enable plaintiff to "wake up after two, three or five years after entry into the MSA, invoke this contractual right, and change the custodial status quo on a dime." Nonsense. Looking as we must at the language of paragraph sixteen and the MSA as a whole, the parties clearly

10

agreed to a one-time waiver of the change-in-circumstances obligation, occurring only after the initial six-month review period and an unsuccessful mediation. It does not provide a carte blanche waiver to be invoked at any time on the whim of a party.

The Family Part judge declined to enforce paragraph sixteen, believing, despite its clear language, plaintiff had to establish a change in circumstances pursuant to the "procedural framework" outlined in Lepis, 83 N.J. at 157-59. In so holding, the judge failed to appreciate the temporary nature of the parties' initial six-month custody and parenting-time arrangement and the reasonableness of their mutual decision to attempt to resolve their initial custody and parenting-time disputes by first participating in a six-month review and mediation before proceeding to a best-interests evaluation and trial. For these reasons, we reverse paragraph two of the order, in which the judge denied the aspect of plaintiff's motion seeking a plenary hearing regarding his requests to modify custody and parenting time without first demonstrating a substantial change in circumstances.

The judge also denied the aspect of plaintiff's motion seeking to compel defendant "to cooperate with a best[-]interests evaluation by plaintiff's expert." The judge found that "[w]hile the terms of the MSA reserve each parties' rights

to obtain a custody evaluation at their own cost, there is nothing in the terms of the MSA that compels the other party to cooperate or facilitate such an evaluation" and that plaintiff had "not presented any compelling justification for why such an evaluation is needed at this time . . . [and] to justify the [c]ourt's intervention to require [d]efendant's compliance with the [p]laintiff's custody evaluation at this time." Because the clear language of the MSA supports the first conclusion and the record supports the latter, we agree and, thus, affirm paragraph one of the order.

Plaintiff cited the language of paragraph sixteen in support of his motion to compel defendant's cooperation. But paragraph sixteen provides only that each party "reserve[d] the right to obtain a best interests forensic custody evaluation"; it says nothing about requiring the other party's cooperation with or participation in that evaluation. In denying plaintiff's motion to compel, the judge did not, as plaintiff argues, deny plaintiff his right to obtain a best-interests evaluation; the judge simply and correctly refused to impose an obligation to cooperate that did not exist in the MSA. Accordingly, we affirm paragraph one of the order, in which the judge denied the aspect of plaintiff's motion seeking to compel defendant to cooperate with his expert's best-interests evaluation.

Affirmed in part; reversed in part; and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3124-22