**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2920-23

DAVID A. DEFREITAS,

    Plaintiff-Appellant,

v.

JULIA M. BYS,

    Defendant-Respondent.

_____

> Argued October 30, 2024 – Decided December 24, 2024
>
> Before Judges Rose and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0348-23.
>
> Theresa A. Lyons argued the cause of appellant (Lyons & Associates, PC, attorneys; Theresa A. Lyons, of counsel and on the brief).
>
> Talia R. Mazza argued the cause of respondent (Broscious Fischer & Zaiter, attorneys; Thomas P. Fisher, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff David A. Defreitas appeals from an April 8, 2024 Family Part order, amending a March 25, 2024 order, which granted as modified defendant Julia M. Bys's motion to enforce an equitable distribution provision of the parties' marital settlement agreement (MSA). Plaintiff argues the motion judge erred as a matter of law because the relief sought by defendant was adjudicated in a March 6, 2023 pendente lite order, which was extinguished by the parties' divorce judgment incorporating the MSA. Plaintiff further claims the judge erroneously reallocated the pendente lite advance of counsel fees without conducting an analysis under Rule 5:3-5(c). Based on our review of the motion record in view of the arguments raised on appeal, we reject plaintiff's contentions and affirm.

I.

The parties were married in September 2018; one child was born of the marriage in 2020. Before they were married, the parties executed a prenuptial agreement (PA). Pertinent to this appeal, the PA obligated the parties to pay their own counsel fees and litigation costs in the event of divorce. Following their four-year union, plaintiff filed for divorce in October 2022. Defendant filed an answer and asserted a six-count counterclaim. She thereafter moved to invalidate the PA.

A-2920-23

Immediately following a conference on March 6, 2023, the motion judge issued a case management order, noting the multiple disputes at issue, including the validity of the PA. The judge ordered pendente lite relief, awarding a "$50,000 litigation fund to [defendant] w[ithout] p[rejudice and] subject to . . . reallocation. . . . Joint investment account used first, then assets of [plaintiff]'s choosing." It is undisputed defendant removed $50,000 from the parties' joint savings account in July 2023.

After mediation, the parties signed the MSA on October 16, 2023, resolving their disputes concerning child custody and equitable distribution of their assets. The equitable distribution article of the MSA provides, in full:

> 5.1 The parties to this Agreement acquired real and personal property during the course of their marriage. However, the parties also entered into a [PA]. Rather than litigating the validity of the [PA], the parties instead are entering into the terms set forth in this [a]greement.
>
> 5.2 [Defendant] has already received a prior lump sum payment of $150,000 from [plaintiff]. [Defendant] shall retain that money free and clear from any claim from [plaintiff]. <u>In addition, there is a savings account that currently holds approximately $86,000 that [plaintiff] has arranged to be transferred to [defendant]. Once received, [defendant] shall retain that money free and clear as well.</u> Finally, within 20 days of the execution of this agreement, [plaintiff] shall transfer to [defendant] a one-time lump sum of $130,000 into an account of [defendant]'s choosing.

3

> Upon receipt of that money, [defendant] shall receive no other monies, and shall have no other claims, for any monetary equitable distribution of any kind unless otherwise set forth herein.
>
> 5.3 But for the foregoing amounts specified herein, and as of the execution of this [a]greement on October 16, 2023, <u>there are no credits or arrears due and owing either party, and all obligations under the June 20, 2023 [p]endente [l]ite [o]rder[1] have been satisfied</u>.
>
> [(Emphasis added).]

The preamble of the agreement also states, "the parties desire this [a]greement to supersede any prior [c]ourt [o]rders entered under their matrimonial docket."

A dual final judgment of divorce (FJOD) was entered on November 30, 2023, incorporating the MSA. Two weeks later, plaintiff moved to enforce litigant's rights under <u>Rule</u> 1:10-3, asserting defendant failed to comply with various provisions of the MSA. Defendant opposed the motion and cross-moved for defendant's violations of the MSA. In February 2024, prior to the motion's return date, defense counsel confirmed the law firm "did not receive the $50,000 litigation fund" pursuant to the March 6, 2023 case management order, but its fees were paid in full by defendant.

---

[1] The parties did not include a June 20, 2023 order in the record provided on appeal, nor was it referenced during oral argument before the present motion judge. The only pendente lite order at issue in this appeal was entered on March 6, 2023.

On March 25, 2024, the present motion judge, who did not issue the case management order, issued an order and accompanying statement of reasons, addressing the relief requested by the parties.[2]  Relevant here, the judge granted as modified defendant's request to enforce the MSA, "ordering plaintiff to replenish the parties' [joint] bank account [in] the amount of $86,000.00."  In her order, the judge stated:

> Defendant confirms that the bank account has $42,979.19.  Therefore, she would be owed $43,021, but she also took $50,000 for a litigation fund which may or may not have been used.  Therefore, defendant must first provide proof within ten (10) days from this order of all payments to [her attorney's law firm] from March 2023, the date of the case management order that awarded her a litigation fund.  Any amount less than $50,000 will be applied as a credit to the balance of $43,021.  If she utilized the full $50,000, then no credit.  After exchange of this documentation, plaintiff shall pay the remaining amount from $43,021 to defendant . . . .

In her statement of reasons accompanying the order, the motion judge explained she agreed in part with both parties' positions.  She reasoned, "defendant rightfully took the $50,000 for the litigation fund as she was permitted to do," and defendant removed the money from the account "in July 2023, months before the parties signed the MSA in October 2023."  The judge

---

[2]  We glean from the record the motions were decided on the papers.

A-2920-23

found: defendant incurred legal fees during mediation and negotiation of the MSA; defense counsel confirmed the firm's fees were fully paid; "[t]here was no requirement that the full $50,000 be given to [defense counsel]"; and "defendant was permitted to remove $50,000 from the joint account to use towards litigation costs." However, the judge further recognized "the $50,000 was for a specific purpose" and "defendant would receive a windfall if it was not fully used." The judge concluded because defendant previously removed $50,000 from the account for her litigation fund, any portion of the $50,000 not applied to her legal fees would be subtracted from the balance plaintiff owed her. The judge noted "the MSA makes no mention of giving plaintiff credit for this $50,000."

Shortly thereafter, plaintiff's counsel sent correspondence to the judge, seeking clarification of the March 25, 2024 order. After a case management conference conducted on the record on April 8, 2024, the judge issued a supplemental order clarifying the $50,000 litigation fund only applied to fees incurred from issuance of the March 6, 2023 order awarding the litigation fund to execution of the MSA on October 16, 2023. Accordingly, after counsel fees incurred during this time period were paid, any remaining amount would be credited against the balance plaintiff owed defendant. This appeal followed.

A-2920-23

II.

Our review of a Family Part order is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Appellate courts accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 412). "We will reverse only if we find the trial judge clearly abused his or her discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012). However, we review a Family Part judge's interpretation of the law de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

Our courts have long recognized MSAs are "'entitled to considerable weight with respect to their validity and enforceability' in equity, provided they are fair and just," because they are "essentially consensual and voluntary in character." Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). Therefore, "'the law grants particular leniency to agreements made in the domestic arena' and vests 'judges greater discretion when interpreting such agreements.'" Quinn v. Quinn, 225 N.J. 34, 45-46 (2016) (quoting Pacifico v. Pacifico, 190 N.J. 258, 266 (2007)).

Guided by the goal of reaching an equitable resolution, we apply contract principles to interpret marital settlement agreements, but we do not make a better

7                                                                    A-2920-23

agreement than the parties made for themselves. See id. at 45. As in other contexts involving contracts, a court must enforce a matrimonial agreement as the parties intended as long as it is not inequitable to do so. Ibid. Therefore, "fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed." Weishaus v. Weishaus, 180 N.J. 131, 143 (2004).

Courts are authorized to issue an award of temporary financial support pending the resolution of an action. See Mallamo v. Mallamo, 280 N.J. Super. 8, 11-12 (App. Div. 1995) (citing Crowe v. Di Gioia, 90 N.J. 126, 132 (1982)). A matrimonial pendente lite award is designed to be a temporary order and does not survive a judgment of divorce, unless expressly preserved or reduced to judgment prior to entry of the final judgment. See id. at 12; see also Bauza v. Bauza, 201 N.J. Super. 540, 542-43 (App. Div. 1985) (holding pendente lite counsel fee award not expressly preserved merges in final judgment). Thus, after the issuance of a final judgment, the pendente lite order is extinguished as a matter of law. See Bauza, 201 N.J. Super. at 543.

In the present matter, plaintiff misconstrues defendant's application before the motion judge. Plaintiff argues the case management order establishing the $50,000 litigation fund was extinguished by the FJOD. However, paragraph 5.2

A-2920-23

of the MSA, incorporated in the FJOD, obligated plaintiff to transfer funds from "a savings account that [then held] approximately $86,000" and permitted defendant to "retain that money free and clear." As the motion judge recognized during colloquy with counsel, the litigation fund and the $86,000 bank account were separate issues. From the entry of the March 6, 2023 order to execution of the MSA, defendant was permitted to remove $50,000 from the parties' joint account to establish a litigation fund for counsel fees. Defendant certified, and plaintiff acknowledges, she removed $50,000 from the parties' joint account in July 2023, three months before the parties signed the MSA.

Although, as plaintiff argues, the March 6, 2023 pendente lite order provided the $50,000 litigation fund was subject to reallocation, the MSA does not address reimbursement or reallocation. Instead, paragraph 5.3 of the MSA expressly provides defendant "shall retain" the $86,000 held in the parties' joint savings account "free and clear" and, under paragraph 5.4, "there are no credits or arrears due and owing either party." See Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (stating courts give contractual terms their plain and ordinary meaning). Further, the FJOD provides the MSA was executed voluntarily, its terms are fair and equitable, and each party was represented by counsel during the process. "[I]n matrimonial matters, . . .

settlement agreements, being 'essentially consensual and voluntary in character,'" are "'entitled to considerable weight with respect to their validity and enforceability' in equity, as long as they are fair and just." N.H. v. H.H., 418 N.J. Super. 262, 279 (App. Div. 2011) (quoting Petersen, 85 N.J. at 642).[3]

Plaintiff's remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We simply note because the motion judge did not award defendant attorney's fees, there was no need to conduct an analysis under Rule 5:3-5(c), as plaintiff argues.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Defendant did not appeal from the order requiring her to credit plaintiff any unused amount of the $50,000 advance. An issue not briefed is deemed waived. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2025).